VIRGINIA B. JONES, Appellant, v. DAVID S. McGONIGLE and LEONA M. HILL, Executors of Last Will of BEN F. JONES; BOARD OF TRUSTEES OF PARK COLLEGE, PARK COLLEGE, CLARA MANTER, JAMES L. JONES, MAGGIE JONES, THELMA MAYER, CHARLES CAVANAUGH, CLARA HILL McGHEE, ARLINE HILL TETLEY, and UNKNOWN HEIRS OF MATTIE GREEN and of EMMA MARSHALL.—37 S. W. (2d) 892.

Division One, March 31, 1931.*

*NOTE: Opinion filed January 5, 1931: Motion for rehearing filed; motion overruled March 31, 1931.

458

*Bruce Barnett* and *Josiah Barnett* for appellant.

*Griffin & Orr* for Park College; *Johnson, Lucas, Landon & Graves* and *Dwight M. Smith* for executors.

FERGUSON, C.—This is a suit in equity to set aside and annul an antenuptial agreement whereby the plaintiff, appellant here, a-greed to accept certain real estate "in lieu of dower or any other marital interest in real estate." All of the legatees and devisees in the will of Ben F. Jones, deceased, and all the heirs at law of the said Ben F. Jones, deceased, are made defendants.

Defendants filed demurrers to the first amended petition, which were sustained. . Plaintiff declined to plead further, and judgment was entered for defendants, from which plaintiff appeals. The petition alleges that plaintiff and Ben F. Jones were lawfully married on August 22, 1923; that the said Ben F. Jones died in Jackson County, Missouri, on the 9th day of December, 1925; that a pur-ported will of Ben F. Jones, deceased, dated the 17th day of Sep-tember, 1925, was presented to the Probate Court of Jackson Coun-ty on the 12th day of December, 1925, and was found and declared by said court to be the last will of the said Ben F. Jones, deceased; that by said purported will, decedent bequeathed the sum of $1,000 to each of the defendants, Clara Manter, James L. Jones and Maggie Jones and certain enumerated items of personal property to de-fendant Thelma Mayer, and that it is stated in said purported will that "said decedent wills and devises no property to Virginia B. Jones, this plaintiff, said will containing the statement that prior to entering into a marriage relation with said Virginia B. Jones, this plaintiff, a prenuptial contract was entered into and a property settlement was made between said testator and this plaintiff;" that the defendant Park College was made residuary devisee and legatee in said purported will; that Ben F. Jones, deceased, has no lineal descendants and all his heirs at law are made parties defendants; that Ben F. Jones died, seized of real estate situate in Jackson County, Missouri which is described. Continuing, the petition states:

"That on August 22, 1923, this plaintiff was lawfully married to said Ben F. Jones; that on and prior to said day and continuously

thereafter since and up to the time of his death he was the owner absolutely of all of the real estate above described and at all of said times the same was of a value in excess of $50,000; that on the day of said marriage and before the hour of the celebration and solemnization thereof this plaintiff and said Ben F. Jones signed an instrument in writing whereby it was recited in substance that said Ben F. Jones should convey to this plaintiff a certain interest in certain real estate known as and numbered 3202 East 21st Street, in Kansas City, in Jackson County, Missouri, to-wit: a remainder therein after the death of said Ben F. Jones, that is to say, that said Ben F. Jones reserved unto himself a life estate, which remainder, subject to a mortgage of $1,000, by the terms of said paper writing was to be accepted by this plaintiff in lieu of dower or any other marital interest in all real estate of said Ben F. Jones; that thereafter a deed was signed and acknowledged by said Ben F. Jones conveying such real estate, with such reservation of life interest, subject to such mortgage, to this plaintiff.

"That said property so conveyed was a lot of ground with a house of five small rooms, of small value; that the interest conveyed by said deed did not exceed $1,500, and such settlement and jointure was and is grossly inadequate; that the value thereof did not exceed one-tenth of the value of this plaintiff's dower, which fact was not known to plaintiff, but was well known to said Ben F. Jones, and said settlement was not entered into by said Ben F. Jones in good faith, and the consideration therefor and thereof was and is so grossly inadequate as to amount to no consideration, and because of such insufficiency and inadequacy of consideration said settlement is void and fraudulent upon the part of said Ben F. Jones.

"That plaintiff had no knowledge as to the value of any of said real estate.

"That December 11, 1926, Clara Hill McGhee and Arline Hill Tetley, defendants herein, instituted an action in this court alleging that the paper writing purporting to be and declared by the Probate Court of Jackson County, Missouri, to be the last will of said Ben F. Jones, deceased, was and is not in fact his last will, in which action judgment was rendered against the plaintiffs therein, but from said judgment the plaintiffs therein have appealed and said cause is now pending in the Missouri Supreme Court, and accordingly this plaintiff joins as defendants herein all of the legatees, and devisees under said will, if the same is a will, and also all of the heirs at law of said Ben F. Jones, deceased.

"Wherefore, this plaintiff prays that said instrument of writing signed by her and by said Ben F. Jones, deceased, upon the day of their marriage as aforesaid, and the said pretended jointure and marital settlement be, by order, judgment and decree of this court, set aside and for naught held and that the same be declared to be

null and void, and that this plaintiff be declared to have the same interest in all of the real estate above described which she should have if the said instrument had not been signed by her as aforesaid, and this plaintiff prays for all other orders, judgments and decrees to which in equity she is entitled in the premises and for all equitable relief.''

Defendants, Park College and the executors, filed separate but identical demurrers to the petition, assigning six grounds therefor. The first four grounds of the demurrers, viz.: jurisdiction of the person of demurring defendants, jurisdiction of the subject-matter, legal capacity of the plaintiff to sue and defect of parties defendants seem to have been abandoned and are not urged here as grounds for sustaining the demurrers, nor does it appear that the demurrers could properly have been sustained on said grounds or either of them. Only the fifth and sixth grounds of the demurrers are presented for our consideration. The fifth ground assigned is that the petition shows upon its face that plaintiff accepted the benefits accruing to her under the antenuptial contract and that she is therefore estopped to deny or contest the validity thereof. The sixth ground is that the petition shows on its face that ''the writing purporting to be the last will of said Ben F. Jones, deceased, was admitted to probate and declared to be such by order and judgment of the Probate Court of Jackson County, Missouri, on the 12th day of December, 1925, and that plaintiff's said suit was filed in this court on April 21, 1927, and more than one year after said will had been admitted to probate, and after the expiration of the one-year period allowed by the statutes of this State for contesting a will had expired; and this court by reason of such fact, is without jurisdiction of plaintiff's suit.''

On the 24th day of May, 1927, and during the regular May Term, 1927, of the Circuit Court of Jackson County, the court made and entered of record the following order: ''Now on this day the separate demurrers of defendants David S. McGonigle and Leona Hill and of the Board of Trustees of Park College and Park College, a corporation, to plaintiff's amended petition, are by the court sustained, to which action and ruling of the court plaintiff separately excepts. Now plaintiff is by the court given ten days from date in which to plead herein.'' Thereafter, and on August 4, 1927, at and during the same term, the court entered the following order and judgment: ''The court having heretofore sustained the defendant's demurrers to plaintiff's petition, the plaintiff declines to plead further. Wherefore, it is adjudged that plaintiff take nothing by her writ herein and that defendants go hence without day, and that defendants recover of plaintiff their costs herein expended.'' From this final judgment on the demurrers, plaintiff appeals.

Respondents have filed in this court a motion to dismiss the appeal, the substance of which is that appellant acquiesced in the ruling of the trial court sustaining the demurrers and waived the right to appeal·"by taking ten days time to plead."

The following may be said to be well settled rules applicable to antenuptial contracts: that the relation existing between a man and the woman whom he is engaged to marry is a confidential one in "an exact and stringent sense" (Donaldson v. Donaldson, 249 Mo. 228); that good faith is the cardinal principle in such transactions, making it incumbent upon the prospective husband to fully inform his prospective wife, with respect to the nature and extent of his estate (30 C. J. 643); that such contract must be clearly understood by the wife, be just and reasonable and free from concealment. As to whether the contract is just and reasonable, courts of equity will take into consideration the adequacy of the provision for the wife. [30 C. J. 642.] Ordinarily, inadequacy raises a presumption of fraud and concealment, throwing the burden of proving the absence of fraud and concealment upon the husband or those claiming under him (30 C. J. 644), and the contract and all circumstances attending its excution will be "regarded with the most rigid scrutiny" by courts of equity. [Carr v. Lackland, 112 Mo. l. c. 442; Egger v. Egger, 225 Mo. 116; 13 R. C. L. 1374.] The petition in this case appears to be based upon the foregoing principles, for it is alleged that the settlement made pursuant to the antenuptial agreement "was and is grossly inadequate; that the value thereof did not exceed one-tenth part" of what plaintiff's dower interest would have been; that such fact was unknown to plaintiff, but well known to the said Ben F. Jones; that the said Jones did not act in good faith and "that plaintiff had no knowledge as to the value of any of said real estate."

Defendants do not demur on the ground that the petition does not state facts sufficient to constitute a cause of action, and it appears that, upon the facts stated in the petition, plaintiff may properly appeal to a court of equity, as she has done, to annul and set aside the antenuptial contract and the "pretended jointure" made pursuant thereto and to determine and adjust the equities of the parties. The sole argument made in support of the fifth ground of the demurrer is that plaintiff does not, by her petition, tender back or offer to restore to the estate of the deceased the real estate conveyed by the deed made by her husband by way of jointure and pursuant to the prenuptial agreement and that she cannot therefore maintain her suit; and, in this connection, respondent invokes the maxim that one who seeks equity must do equity. Where acts to be performed by the parties to a contract are mutual and dependent, or where the existence of a right in one claiming it is dependent upon the performance of duties on his part, as by the payment of money

or delivery of goods, tender of performance by him is necessary to maintain a suit to enforce the right. But, we are not dealing here with a case wherein a tender of money, property, a deed or an offer to convey real estate must be made as a prerequisite to maintaining a suit as on a contract to convey and purchase real estate for a fixed money or property consideration, or a suit to set aside and annul a fraudulent or irregular foreclosure sale, or the specific performance of a contract to convey real estate. Plaintiff is not seeking to retain the real estate conveyed to her, but to the contrary she asks that both the antenuptial contract and the "pretended jointure and marital settlement" made thereunder, by which said real estate was conveyed to her, be annulled, "set aside and for naught held," in which event the real estate so conveyed to her would pass with and as other real estate of which her husband died seized. She submits her claim to a court of equity and thereby offers to abide by the action of that court and be subject to any equitable conditions imposed or required by the court in its decree.

In Shuee v. Shuee, 100 Ind. 477, a widow brought suit in equity to set aside a family settlement by which she had accepted payment of a sum much less than she was by law entitled to, in full of her share of her deceased husband's estate. The bill offered to submit to such terms as the court would decree, but plaintiff did not offer to return all or any part of the money she had received. The court said:

"It is always within the power of a court of equity, where its decree is invoked, to require as 'the price of its decree,' that the person invoking it shall submit to equitable terms, and accordingly a chancellor always inquires concerning the equities which the plaintiff must do, in order that he may be entitled to the relief which he seeks."

We do not think that the enforcement of the principle of equity—that he who seeks equity must do equity—is dependent upon any manner or form of pleading, but its true application is in the form, conditions and provisions of the orders and decrees of the court whereby equitable terms are imposed as a condition precedent to the equitable relief granted. [Whelan v. Reilly, 61 Mo. l. c. 569.] The true meaning of the rule that he who seeks equity must do equity, is defined by Judge Sherwood in Whelan v. Reilly, supra, as follows:

" . . . where a complainant comes before a court of conscience invoking its aid, such aid will not be granted except upon equitable terms. These terms will be imposed 'as the price of the decree it gives him.' The rule 'decides nothing in itself,' for you must first inquire what are the equities which the plaintiff must do in order to entitle him to the relief he seeks."

At 21 Corpus Juris, 174, the rule is stated thus:

"The maxim requires that any person asking the aid of equity . . . will be compelled to accord, to the other party, all equitable rights to which the other is entitled in respect to the subject-matter. Relief inconsistent with the equities of the adverse party will be denied, and where the granting of the relief raises equitable rights in favor of defendant, the according of such rights will be imposed as a condition of granting the relief."

The application of the foregoing rules is made by a court of equity in its decree and orders and is not dependent upon what plaintiff offers by his bill or petition to do, but when the plaintiff comes into a court of equity and submits his cause to and offers to abide by the decree of that court, a court of equity will seek to do complete justice and determine and adjust the equities of all the parties.

Respondents say that appellant, in her petition, did not tender a deed to the real estate conveyed to her by her husband pursuant to the antenuptial agreement either into court or to the executors or residuary legatee, or allege any reason or excuse for not doing so. But, respondents do not aid us by suggestion as to who should have been made the grantee in such a deed. The petition states that certain heirs at law of the deceased Jones, made defendant therein, had instituted and were then prosecuting an action contesting the validity of the will. It is apparent that the tendering into court of a deed executed either in blank or conveying to any of the parties defendant, would have been a vain, useless and unnecessary procedure. The appellant seeks to have the antenuptial contract and jointure pursuant thereto "set aside and for naught held, and that same be declared null and void" and invokes equitable relief, which submitted and tendered the whole matter and all the equities involved to a court of equity for its determination and adjudication. The demurrers should not have been sustained on the fifth ground thereof.

The sixth ground of the demurrer is that it appears upon the face of the first amended petition, against which these demurrers are directed, that the original petition in the cause was filed more than one year after the date it is alleged the purported will of the deceased, Jones, was admitted to probate "and after the expiration of the one-year period allowed by the statutes of this state for contesting a will."

This is not an action to contest a will, but a suit in equity to annul and set aside an antenuptial contract and jointure and the bringing of such suit is not limited or restricted by Section 525, Revised Statutes 1919, relating to the time within which a contest of a will may be instituted. In support of this ground of demurrer, respondents do not discuss the specific averment set out therein, but cite and discuss numerous cases holding that a party cannot

both accept and reject the same instrument and that this rule applies to deeds, wills and all other instruments. That line of authority, however, is not applicable here, for it does not appear from the face of the petition that plaintiff seeks to hold and retain the property conveyed pursuant to the antenuptial agreement, but rather seeks a decree in a court of equity annulling and setting aside the antenuptial agreement and the jointure thereunder that she may thereby be enabled to claim her marital rights under the statutes. In further support of the sixth ground of the demurrer, though not in keeping with the specific averment thereof, respondents say:

". . . inasmuch as the property conveyed to appellant as a consideration for the antenuptial contract was intended to be in full discharge of her claim of dower and since the deed took effect at the time of the death of her husband, and his will expressly states that by reason of such property settlement, no other property was left to her in his will, it became the duty of the appellant, if she was not satisfied to accept the provision made for her under the terms of said antenuptial contract, to file a formal renunciation of said will and of said contract, *as required by the statutes.*"

Section 328, Revised Statutes 1919 reads:

"If any testator shall, *by will, pass any real estate to his wife,* such devise shall be in lieu of dower out of the real estate of her husband whereof he died seized, or in which he had an interest at the time of his death, unless the testator, by his will, otherwise declared."

And, that part of Section 329, Revised Statutes 1919, to which respondent evidently alludes reads:

"In such case the wife shall not be endowed in any of the real estate whereof her husband died seized or in which he had an interest at the time of his death unless she shall, by writing duly executed and acknowledged as in cases of deeds for land, and filed in the office of the court in which the will is probated and recorded within twelve months after the proof of the will, not accept the provisions made for her by said will."

But, it does not appear from the references to the will made in the petition that the testator *by the will passed any real estate to his wife,* the appellant herein, and therefore the renunciation under Section 329 is not required. The antenuptial contract was not executed by will, but by deed. We find no statute and respondents cite none requiring formal renunciation of an antenuptial contract such as is set forth in the petition. The only statutory provision relating to renunciation of jointure is Section 331, Revised Statutes 1919, which is as follows:

"If any deed of conveyance, assurance, agreement for jointure be made *after* marriage, or be made *before marriage and during the*

*infancy of the wife,* in either case the widow may, at her election, renounce her jointure, and have dower.''

Clearly this section does not apply to the contract and jointure alleged in the petition. Further, and purporting to be in support of the sixth ground of the demurrer, respondents contend that an election and renunciation was required on the part of appellant ''within twelve months after the probating of the will, as though the property had been specifically devised to her by will, as she knew the property was conveyed as in full of her dower rights.'' This contention seems also to be a departure from the specific averment in the sixth ground of the demurrers. In effect, it raises the question of *laches* and attempts to apply certain statutes limiting the time in which suit may be brought or rights become fixed after the probate of the will. Laches ''is a doctrine peculiarly applicable to suits in equity. It is independent of statutes of limitation which, unless otherwise provided by law, apply to legal actions only. Lapse of time is one of the elements entering into the doctrine of laches, but by no means a sole determining element. All the surrounding facts and circumstances must be considered along with the lapse of time.'' [Virginia C. Mining, Milling & Smelting Co. v. Clayton (Mo. Sup.), 233 S. W. 215; Bliss v. Prichard, 67 Mo. 181; Kline v. Vogel, 90 Mo. 239.] Whether appellant's alleged delay in asserting her claim amounts to laches must be determined by the facts of the case. Mere delay alone does not constitute laches. It must be delay that works to the disadvantage and prejudice of the defendants and the defendants must have been injured thereby. [Davies v. Keiser, 297 Mo. 1, 246 S. W. 897; Johnson v. Antry, 5 S. W. (2d) 405; Lindell Real Estate v. Lindell, 142 Mo. 61, 43 S. W. 368.] It does not appear upon the face of the petition that defendants have been prejudiced, put to any disadvantage or caused to suffer any loss or change of position by the delay in instituting suit charged against plaintiff. While laches clearly appearing upon the face of the petition may be taken advantage of by demurrer (Bliss v. Prichard, 67 Mo. 181), yet whether a party has been guilty of laches is peculiarly a question of fact which can be better determined upon the merits from all the facts and circumstances in the case and a demurrer ought not to be sustained to a petition upon that ground unless clearly demanded. [Guels v. Stark, 264 S. W. 693.] The demurrer should not have been sustained on the sixth ground thereof.

Upon respondents' motion to dismiss the appeal herein the respondents assert that when a demurrer to a petition is sustained, the plaintiff must either elect to stand on his petition, let judgment go against him and appeal, or acquiesce in the ruling of the court and request time in which to plead; that since the record in this case shows that upon sustaining the demurrer, time was given in

which to plead, it must be presumed that counsel for plaintiff *asked* for time to plead and thereby acquiesced in the ruling of the court sustaining the demurrers and waived the right to appeal. In 3 Corpus Juris, 667, the general rules are stated as follows:

"The mere fact that the court, on sustaining a demurrer, and without any request therefor, grants leave to amend does not bar an appeal, if the party against whom the demurrer is sustained does not act on such leave, but elects to stand on his pleading. In some cases the same rule is applied even where the party requests and obtains leave to amend, if he does not act thereon, but finally elects to stand on his pleading and appeal; but by the weight of authority a party, by thus obtaining leave to amend, even though such leave is not acted upon, waives the right to appeal from a judgment or order sustaining a demurrer, unless the party, after procuring such leave, obtains an order allowing him to withdraw his request therefor and to stand on his pleading, in which case he may appeal as if no leave to amend had been obtained."

We have hereinbefore set out in full the orders and final judgment of the court upon the demurrers. By the first order, the court sustained the demurrers, but did not at that time enter a final judgment thereon. That order concludes: "Now plaintiff is by the court given ten days in which to plead." The order does not recite that plaintiff requested or asked leave to amend her petition and from a reading of the order it may as well be assumed that the court of its own motion granted time in which to amend, if the plaintiff elected to do so, as to assume, as respondents do, that the order granting time in which to amend was made pursuant to the request of plaintiff. If we do assume from the fact an order granting appellant an opportunity to further plead was entered that it was made pursuant to appellant's request we must then look to the final order and judgment of the court. The final order and judgment was entered at the same term of the court, though some time after the expiration of the time allowed plaintiff in which to plead. This order recites: "The court having heretofore sustained the defendants' demurrer to plaintiff's petition, the plaintiff declines to plead further," and concludes with judgment against plaintiff. If we follow the foregoing rules cited from 3 Corpus Juris, 667, we think this order must be construed as allowing plaintiff to withdraw any request theretofore made for leave to amend her petition and to stand on the petition.

In Spears v. Bond, 79 Mo. 467, an order of record was made sustaining a demurrer to the petition, but no final judgment on the demurrer was entered. This court said that the trial court "upon the theory upon which it seems it acted, should have held the petition insufficient in law, and given the plaintiff an opportunity to amend. But, if plaintiff declined to amend, but elected to stand on

470

his petition, then final judgment should have gone, from which an appeal could have been taken.''

But we think this question is disposed of by our statute, Section 1229, Revised Statutes 1919, which is as follows: "After a demurrer the plaintiff may amend, *of course*, and with or without costs, as the court may order.'' The words *"of course"* are defined in Ballentine's Law Dictionary to mean "as a matter of right.'' Black's Law Dictionary thus defines the words "of course:'' "Any action or step taken in the course of judicial proceedings which will be allowed by the court upon mere application, without any inquiry or contest, or which may be effectually taken without even applying tó the court for leave, is said to be 'of course.' ''

Under this statute when a demurrer to a petition is sustained the plaintiff, without being required to first obtain leave of court to amend, is entitled to an opportunity to amend as a matter of right, which should be allowed by the court upon its own motion or upon application of the plaintiff; and such "mere application" by plaintiff should not be construed as an acquiescence in the order of the court sustaining the demurrer. If the plaintiff, having thus been given the opportunity to amend his petition as the statute directs, declines to plead further and elects to stand upon his petition, then final judgment should be entered against him from which he may appeal. The motion to dismiss the appeal herein is overruled.

The judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.