**PEABODY COAL COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**John CORBIN, Defendant-Appellant.**

**No. 25368.**

Kansas City Court of Appeals, Missouri.

Dec. 9, 1970.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1971.

Application to Transfer Denied April 12, 1971.

---

1. The court did allow $400 on account to the wife for her second attorney's services as well as $100 suit money.

**758**

Donald Russell, Russell & Brown, Nevada, E. J. Murphy, Butler, for defendant-appellant.

John M. Belisle, Belisle, McNabb & Kyser, Butler, for plaintiff-respondent.

JAMES W. BROADDUS, Special Commissioner.

This is a proceeding for a Declaratory Judgment. The trial court found the issues in favor of plaintiff. Defendant has appealed. This court has jurisdiction inasmuch as the amount in dispute, exclusive of costs does not exceed the sum of $15,-000.00. Section 477.040, V.A.M.S. Nor does the case involve the title to real estate. Judge v. Durham, 274 S.W.2d 247, Mo.Sup.; Albi v. Reed, 281 S.W.2d 882, Mo.Sup.; Bates v. Mueller, 413 S.W.2d 853, Mo.App.

The facts are: On April 5, 1954, Emma J. Liggett, a single woman, was the owner of certain described real estate situated in Bates County, Missouri. On the above date she executed a written instrument dated April 3, 1954, entitled "Grant of Right of Way, Easement and Option for Extension Thereof." Hume-Sinclair Coal Mining Company, a corporation, was the second party (grantee) named in the instrument. Said instrument was duly filed of record in Bates County, Missouri.

In general the instrument provided for the construction, operation and maintenance of a haulage road and telephone and electrical lines, to be used in connection with the coal mining operations of the Hume-Sinclair Coal Mining Company on a strip of land 200 feet wide across the land owned by Emma J. Liggett. The consideration recited was $1500 and the term was 5

years, terminating on April 2, 1959, with provision for extension.

The instrument further provided that: "Should second party, successors or assigns, desire to continue to use said road and the power lines therewith used, described hereinbefore, for a period past the five years hereinbefore set forth, then second party shall pay to first party, or her heirs or assigns, $300 per year in advance and second party successors or assigns may continue such use for an indefinite period of time so long as such $300 per year is paid as aforesaid * * *."

By subsequent conveyances all rights under said instrument became vested in plaintiff, Peabody Coal Company.

Emma J. Liggett died on June 14, 1957, and her estate was probated in Bates County, Missouri. The land in question was inventoried as part of her estate and sold by order of the Probate Court to John Corbin, defendant herein, on June 18, 1958.

Paragraph XI of plaintiff's petition alleges "that said easement herein described and referred to is a part of easement covered from fifteen separate tracts of land serving plaintiff's coal mining operations for the purpose of a railroad spur as an outlet to the main line of said railroad; that plaintiff has maintained and kept in force and effect all of said easements and has expended large sums of money therefor; that the denial of its right to renew and extend its easement across this land would render worthless and of no value the remainder of said easements which would result in irreparable injury and damage to this plaintiff."

Plaintiff put on evidence to establish that it had made an investment in this total right-of-way easement and rental payments to the Kansas City Southern Railroad of $10,634.10 per year to protect its coal reserves in that area. This represents an investment in excess of $100,000 during the period of time here involved.

Plaintiff's home office is in St. Louis, Missouri. Carl E. Stokes is in charge of its land department. Charley Smothers was plaintiff's local land agent and resided in Butler, Missouri. Mr. Stokes was called as a witness. Mr. Smothers was not.

Desiring to exercise its option to extend the lease, plaintiff on March 10, 1959, issued a draft in the amount of $300, the amount called for by the terms of said lease, made payable to Emma J. Liggett, and mailed it to her at her last known address, which was Hume, Missouri.

Under date of March 23, 1959, Mrs. Liggett's nephew, Elwood Liggett, wrote a letter to plaintiff advising of Mrs. Liggett's death and stated that plaintiff's check to Mrs. Liggett was being held by a named lawyer for her estate. This letter also advised plaintiff that the land in question had been sold to defendant, John Corbin, of Hume, Missouri, on June 18, 1958. This letter was received by plaintiff on March 24, 1959, and on that same date Mr. Stokes sent a company memorandum to his local agent, Mr. Smothers, at Butler. Enclosed therewith was a copy of Liggett's letter and the memorandum instructed Smothers to secure a copy of the deed to Corbin and ascertain the date of such deed. Smothers was also instructed to pick up the plaintiff's check to Mrs. Liggett and return it. This memorandum specifically pointed out that the renewal payment was due on April 2, 1959.

On April 2, 1959, Smothers wrote a letter to Stokes in response to the above company memorandum. Enclosed with the letter was the plaintiff's check to Mrs. Liggett. The letter advised that the deed to defendant Corbin had been recorded September 23, 1958, in a given book and page. This letter further stated that a copy of the deed would be forwarded "in due time". Smothers expressed his (mistaken) understanding that plaintiff had sent its renewal check to Corbin.

Under date of April 7, 1959, plaintiff issued a check to defendant Corbin in the

amount of $300, which check was received by Corbin on April 8, 1959, and returned to the plaintiff by a letter from an attorney for defendant notifying plaintiff that defendant was claiming that said lease had expired for failure to pay the rent within the time specified, and further notifying plaintiff to stay off the land.

Mr. Stokes testified that the first knowledge plaintiff had of the death of Mrs. Liggett was: "When we received from Elwood Liggett a letter dated March 23, 1959, mailed from Hume, Missouri."

Mr. Stokes was also asked by defendant's counsel: "Q. Do you have any knowledge as to when Charley Smothers first learned of Emma Liggett's death? A. At the same time this was reported here (indicating the March 23rd letter). Q. And not before? A. No, sir."

Defendant Corbin testified: "Q. Did you ever have any conversations with him (Smothers) concerning your purchase of this Emma J. Liggett property? A. I told him that I bought it. Q. Do you recall when you told Mr. Smothers that you had purchased this property? A. Well, it was shortly after I got it. It was in the fall."

The parties sharply disagree as to whether we are dealing with a lease or an easement, but this controversy need not be decided.

Defendant's brief states that its position throughout the case is this: "That plaintiff's lease was for a period of five years and terminated with the afflux of time, on April 2, 1959."

Mr. Stokes was cross-examined extensively. He was asked: "Q. At that time (March 24) was there any reason why you could not have mailed a check to Mr. Corbin or to Mr. Smothers and had him deliver it to Mr. Corbin? A. I wanted it determined that Mr. Corbin was the owner. Q. You chose the manner in which to proceed at this time, did you not? A. Yes, sir. Q. And at that time you certainly had time to correspond or to for-ward checks or drafts by mail, did you not? A. Had I elected to do that, I presume I could have. Q. But you elected to proceed in the manner which you did? A. Yes sir."

The chancellor found among other things that plaintiff acted in good faith and was not guilty of laches and ordered and decreed "that plaintiff's easement across the land above described be and the same is in full force and effect, and is a valid and binding easement on said land.

"It is further ordered that plaintiff tender unto the Clerk of this Court all accrued rentals to date and that plaintiff continue said payments to the Clerk of this Court for the benefit of the defendant so long as said option is exercised.

"It is further ordered * * * that the defendant be and he is hereby enjoined from interferring with plaintiff's use and enjoyment of said easement."

We are of the opinion that the chancellor's ruling that plaintiff was not guilty of laches and was entitled to the relief prayed for was correct.

In 30A C.J.S. Equity § 112, p. 19, it is stated: "Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, *resulting in a disadvantage to the other party.*" (Emphasis ours.)

In 27 Am.Jur.2d, par. 152, page 687, it is stated: " 'Laches' has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances *causing prejudice to the opposite party*, as will operate as a bar in equity." (Emphasis ours.)

Our Supreme Court in the case of Schaeffer v. Moore, 262 S.W.2d 854, held that: "Where no one has been *misled to his harm* in any legal sense by delay, and the *situation has not materially changed, the delay is not fatal.*" (Emphasis ours.)

And our Supreme Court in the case of Jones v. McGonigle, 327 Mo. 457, 37 S.W. 2d 892, 897, said: *"Mere delay alone does not constitute laches.* It must be *delay that works to the disadvantage and prejudice* of the defendants and the defendants *must have been injured thereby."* (Citing cases.) (Emphasis ours.)

This court held in Wood v. White Eagle Oil and Refining Co., 274 S.W. 894, in an opinion by the late Judge Bland, that "The question of laches is addressed to the sound discretion of the chancellor."

Defendant testified that he was using the land involved and had so used it since he purchased it for farming. Thus there was no change of conditions and the rights of no third persons have become involved. Defendant did not show nor did he claim that he had been *damaged* or *injured* or *prejudiced* in any way by the six-day delay in tendering the check.

Plaintiff alleged and its evidence showed that it would suffer great hardship and irreparable loss in the event its easement was not allowed to remain in force. It is well settled that a court of equity may take jurisdiction of a cause on the grounds of irreparable injury. As stated in Vol. 27 Am.Jur.2d, at page 544: "As a general rule, an equity court may assume jurisdiction of a cause on the ground of irreparable injury * * *. The power of the court to act in this situation is said to be one of the most valuable characteristics of the equity jurisdiction."

And under our statute, Sec. 526.030, V. A.M.S.: "The remedy by writ of injunction or prohibition *shall exist in all cases where * * * irreparable injury* to real or personal property is threatened * * *." (Emphasis ours.)

Let us analyze the facts. Mr. Carl E. Stokes on March 10, 1959, was in charge of plaintiff's land department at its home office in St. Louis, Missouri. Renewal time (April 2, 1959) drew near and pursuant to his responsibility as manager of plaintiff's land department, Mr. Stokes sent the company's renewal draft in the amount of $300.00 to Mrs. Emma J. Liggett, the original grantor, at her last known address—Hume, Missouri. Responsive thereto, Mr. Stokes received on March 24, 1959, a letter dated March 23, 1959, from one Elwood Liggett, nephew of Emma J. Liggett. This communication stated that: Mrs. Liggett had died, the land in question had been inventoried as part of her estate and had been sold to defendant John Corbin on June 18, 1958. Plaintiff was therein further advised that its $300.00 draft had been delivered to and was being held by the attorney for the Emma J. Liggett estate. This letter did not state how the land in question had been sold, whether by the heirs, through a partition suit, by the Probate Court to pay debts, or under foreclosure. So far, at least, Mr. Stokes' actions in this matter demonstrated the exercise of reasonable care and diligence.

We examine further. On the same day that the nephew's letter was received, Mr. Stokes wrote a letter to Mr. Charley Smothers, the company agent at Butler, Missouri. Therein Smothers was advised as to the contents of nephew Liggett's letter and that the company's renewal date was April 2, 1959. Smothers was requested and directed to "pick up" the company draft, secure and send a copy of the Corbin deed to Stokes in St. Louis. We believe that Stokes was justified in not sending out a second draft on the nephew's statement alone. We think he was justified in wanting to learn just who sold the land to Corbin and if Corbin was actually the sole and complete owner, before he sent out a second check. The reply from Smothers was dated April 2, 1959, or nine days later. April 2, 1959 was technically the last day of grace. By this letter the first draft was returned. Stokes was advised Corbin's deed was recorded September 23, 1958 and that a copy would be forwarded in "due time". Since April 2, 1959 was the termination date, it was then

too late to get a timely draft to Corbin. Besides, in our opinion, Stokes was justified in waiting briefly for a copy of the deed.

In any event, Stokes and plaintiff, whose agent he was, waited for six days more and on April 8, 1959, sent a draft for $300.00 to Corbin and notified him that the renewal option was being exercised.

Throughout the years there have been many instances where one party did not strictly and timely perform under an agreement. In such instances technically, under the law, such party forfeited his right or was subject to a penalty if the agreement so provided. Equity, however, would examine the circumstances and if right, reason and justice demanded, would excuse the technical noncompliance and forbid the other party from exacting his "pound of flesh".

■ ■ In the case before us, we believe that plaintiff exercised the care and promptness, which might reasonably be expected from a reasonably prudent person under all the existing circumstances, and that there was therefore reasonable excuse for its failure to strictly comply. But this factual conclusion, standing alone, may not be sufficient to authorize equitable interference. So, we will examine further. Plaintiff has expended over $100,000.00 to other persons in connection with this project, which for future use would be lost, if the Liggett agreement were cancelled. Therefore, we determine that plaintiff would suffer an irreparable and substantial loss if its prayers for equitable relief go unheard. This constitutes a second pillar authorizing, justifying and permitting such relief. Then we look at

defendant's status. Would he suffer thereby? We find his position would be completely unaffected by a continuation of the Liggett agreement. His position is the same as if payment has been made on April 2nd. His position has not been prejudiced, impaired or even affected by the six-day delay. No third-party rights or positions have intervened during this brief hiatus. Justice, fairness and reason call for equitable intervention. In our opinion this is a classic case for the application of equity and we approve the action of the chancellor in doing so.

The judgment below directs "that plaintiff tender unto the Clerk of this Court all accrued rentals to date and that plaintiff continue said payments to the Clerk of this Court for the benefit of defendant so long as said option is exercised." We do not know that defendant will live and continue to own the land in question "so long as said option is exercised". Furthermore, after final termination of this lawsuit we know of no reason why the Clerk should continue to act as collector, banker and paymaster.

This being an equity case, we may modify or correct the judgment here. We modify by providing that if and when this lawsuit is finally terminated, payments shall not thereafter be made through the Clerk's office, but from and to the parties directly. As so modified, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.