**C.A. BIANCO, INC., et al.,**
**Plaintiffs-Appellants,**

v.

**Emil E. HOECHST, et al.,**
**Defendants-Respondents.**

No. 44982.

Missouri Court of Appeals,
Eastern District.

Sept. 13, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1983.

Application to Transfer Denied
Dec. 20, 1983.

Shulamith Simon, Mark G. Arnold, St. Louis, for plaintiffs-appellants.

F. Wm. McCalpin, Deborah S. Grossman, St. Louis, for defendants-respondents.

SNYDER, Presiding Judge.

This is an appeal from a judgment in a court-tried case which denied appellant's petition for specific performance of a contract for the conveyance of easements, the dedication of a roadway, and the sale of a small parcel of real estate. The judgment is affirmed.

Respondents, Mr. and Mrs. Emil E. Hoechst, were the owners of a 101 acre tract of land in northwest St. Louis County. This tract of land lies on the north side of St. Charles Rock Road, which runs approximately east-west.

Adjoining respondents' parcel along its eastern boundary is a 73-acre tract, also located on the north side of St. Charles Rock Road, which is presently owned by Points West Associates, a limited partnership. The general partner of Points West Associates is C.A. Bianco, Inc., a corporation, whose president, Carl A. Bianco, was the appellants' principal witness in the case under review.

In late 1979, Carl Bianco became interested in purchasing the 73-acre tract and developing it into an industrial park. There was no access to either the Hoechst property or the 73 acres from St. Charles Rock Road. Mr. Bianco needed highway access to the 73-acre tract in order to develop it. He sought to obtain this access by an extension of the Earth City Expressway from its present terminus on the south side of St. Charles Rock Road for the necessary distance north of St. Charles Rock Road.

The extension would, however, have to cross the Hoechst property. In order to obtain the desired access, Realty Investment Corporation (Realty), another corporation over which Carl Bianco presides, first attempted to purchase the Hoechst land. Mr. Bianco carried on the negotiations with Mr. Hoechst. After they failed to reach an agreement on a purchase, the Hoechsts and Realty on June 16, 1980, signed a contract

which would provide for the needed highway access.

The contract required Realty to prepare, sign if appropriate, and submit to the Hoechsts documents necessary to dedicate the extension of the Earth City Expressway, to grant easements over the parties' tracts for water lines and sanitary sewers, and to convey from the Hoechsts to Realty a small tract of land, .11 acres, abutting the east line of the proposed roadway extension. These documents were to be submitted to the Hoechsts by December 1, 1980.

The easements, roadway extension, and small tract of land were set out in a plat attached to and made a part of the contract. This plat is reproduced in somewhat simplified form:

Boundary between Noechst and 73 acre tract

Earth City Expressway Extension

Proposed 73 acre Industrial park

.11 acres

Hoechst 101 acre tract

Scale in Feet
25    50    100

N

15' Utility Easement

indicates limitation of access

15' Utility Easement

manhole and Hoechst access Point

Sanitary Sewer

St. Charles Rock Road

Eark city Expressway

Plaintiff's Exhibit 1.

The Hoechsts were obligated to sign and return the documents by December 15, 1980.

Realty was to have obtained the approval of the appropriate government agencies for the proposed improvements by December 31, 1980. In addition, Realty was to obtain a letter of credit from a St. Louis or St. Louis County bank in favor of the Hoechsts equal in amount to the estimated cost of constructing and installing the utilities.

Realty was also obligated to pay all costs relating to preparing the necessary documents and constructing the improvements. After construction was completed, the .11-acre tract of land was to be conveyed to Realty by the Hoechsts for a price of not more than $5,000.

Although plats, grants of easement, and other necessary documents were submitted to the Hoechsts on November 28, 1980 and December 3, 1980, Emil Hoechst refused to sign the documents. He refused to explain to Mr. Bianco his reasons for not signing.

Realty continued to develop plans for the 73 acre property and eventually closed out its purchase of the property in February, 1981. Realty then conveyed the property to Points West Associates, to whom Realty had apparently earlier delegated some of its duties under the contract with Hoechst.

Appellants' sole contention on appeal is that the trial court erred in finding that Realty failed substantially to perform its obligations. The cause was tried to the court. The decree of the trial court will be sustained " . . . unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v.*

*Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The first issue is whether the question of substantial performance is one of fact or of law.

" . . . [W]hether there has been a substantial performance of a contract, or whether a breach is substantial, is a question of fact for the jury or other trier of facts, except where the evidence is clear and undisputed, in which event it is one of law . . . ." 17A C.J.S., Contracts § 630 (1963), *Smith v. Gerhardt,* 220 S.W.2d 85, 88[7] (Mo.App.1949); MAI 26.07 (3d Ed.1981).

Appellants presented all the evidence. Respondents presented none. Appellants' evidence disclosed that Realty or its delegatees made substantial changes in the original plans which were a part of the contract. The only real question is whether the undisputed changes in the contract constituted a material breach.

Thus, the question presented is whether the trial court erroneously declared or applied the law. *See S.G. Adams Printing & Stationery Co. v. Central Hardware Co.,* 572 S.W.2d 625, 629[6, 7] (Mo.App.1978); *Murphy v. Carron, supra.* This court concludes that the trial court neither erroneously declared nor erroneously applied the law.

Among the documents submitted to Hoechst for approval in December, 1980, were plats of the proposed improvements which depicted how the improvements would actually be made. The following drawing represents a somewhat simplified version of one of the plats, Plaintiff's Exhibit 5. The reader should compare the following drawing to the one which had been agreed upon:

*Plaintiff's Exhibit 5*

---

The trial court found numerous breaches by Realty or its delegatees. This court notes only the more significant ones.

First, the Hoechsts were not provided access to the sewer line in the 15-foot easement as originally agreed upon and shown in Exhibit One, *supra.* Instead, as indicated in Exhibit Five, *supra,* the Hoechsts were given access on the east side of the expressway extension at a point over four hundred feet from the agreed upon access point. Inasmuch as the changed access point is not on the Hoechsts' property and the plats do not show an easement in favor of the Hoechsts, they have no assurance that they

will be able to obtain access at the point designated in Exhibit Five.

Appellants contend that the change in the sewer lines was mandated by a requirement of the Metropolitan Sewer District. Thus, argue appellants, their conduct falls within the rule that parties who contract with reference to a subject matter within the limits of a municipality take notice of, and incorporate into the contract, provisions of the municipality's regulations. *Lazare v. Hoffman,* 444 S.W.2d 446, 450[1] (Mo.1969).

■ *Lazare* and the case at bar are distinguishable because here there were no relevant ordinances or regulations of which the Hoechsts could take judicial notice. The requirements are imposed as the result of communications with Metropolitan Sewer District personnel which apparently occurred after the contract was signed. Unpublished remarks of government officials which occurred after the contract was signed cannot be incorporated into the contract absent some evidence that the parties to the contract adopted the statements.

Second, the Hoechsts were not assured that they would have access to water lines in the 15-foot easement on their property. The original contract required the water lines to be installed in this easement; however, Realty or its delegates gave the St. Louis Water Company discretion to install water lines on either side of the expressway extension. If the water lines were installed on the industrial park's side of the expressway, the Hoechsts might not have access to the water line because the record does not reveal that the Hoechsts have been granted an easement over the proposed industrial park.

Third, instead of dedicating the expressway extension to either St. Louis County or the Missouri Highway Commission as required by the contract, appellants dedicated the extension to the City of Bridgeton which imposed limitation of access requirements. Those limitations of access requirements do not appear on Exhibit One, *supra,* or in the text of the contract.

Appellants maintain that the Hoechsts were not prejudiced by the limitation of access. First, appellants point to some evidence that St. Louis County might have imposed the same limitation of access requirements as the City of Bridgeton. Appellants have missed the point. The contract shows no limitation of access along the expressway extension at all and, therefore, the dedication to the City of Bridgeton with limitations on access breached the parties' agreement.

Appellants also argue that the evidence showed the Hoechsts were not harmed because Mr. Hoechst wanted an additional limitation of access at the northeast end of the extension so that no governmental agency would have a right of access at that point. However, it should be pointed out that there was no testimony that Mr. Hoechst wanted a limitation of access along the more lengthy northern edge of the extension or that Mr. Hoechst wanted his own access limited.

Finally, appellants argue that the limitations of access were requirements of the City of Bridgeton of which the Hoechsts could take notice. *See, Lazare v. Hoffman, supra.* As with the redesign of the sewer lines, appellants can point to no ordinance or regulation in the record which requires the limitation of access.

The fourth important breach concerns the letter of credit. The amount of the letter of credit was insufficient to cover the actual cost of construction because an engineer employed by Mr. Bianco underestimated the cost of installing the water main by about $9,000. In addition, the letter of credit required all vouchers to be submitted by March 31, 1981; therefore, the letter of credit provided no security for payment of construction costs after March 31, 1981. It was likely that the construction period would extend beyond March 31, 1981 because the contract was amended by Realty before it was signed by adding: "(but Developer shall in no event be required to commence work in December, January or February and time shall be extended accordingly.)"

Although the amount of the letter of credit arguably meets the terms of the contract because a professionally licensed engineer estimated the cost of construction, the expiration date of the letter of credit fails to conform to the contract. Appellants argue that no harm could possibly occur from this expiration date because an escrow agreement called for the release of the full amount of the letter of credit to the Hoechsts if Realty failed to provide a substitute letter of credit by March 31, 1981. However, the Hoechsts were not parties to the escrow agreement.

■ This court need not consider whether the several breaches of contract by Realty or its delegatees would constitute a substantial failure to perform if considered separately. It is enough to say that, when considered together, the deviations from the contract terms support a finding of substantial breach.

■ Throughout their brief, appellants insist their conduct under the contract meets the requirements for specific performance as set out in *Peabody Coal Co. v. Corbin*, 464 S.W.2d 757 (Mo.App.1970). *Peabody Coal Co.*, which was a declaratory judgment action, set out essentially three requirements for the authorization of equitable intervention: (1) the person seeking relief should exercise the care and promptness which might be reasonably expected from a reasonably prudent person under all the existing circumstances; (2) the person seeking relief will suffer irreparable and substantial loss if equitable relief is denied; and (3) the person against whom equitable relief is sought will not suffer injury or prejudice as the result of equitable relief. *Id.* at 762[1, 2].

Appellants meet neither the first nor third prong of the *Peabody Coal* test. Realty and its delegates agreed to install sewers and water mains according to the terms of the contract. Their performance of those obligations is what is reasonably to be expected under the circumstances. The Hoechsts agreed to have sewers and water lines installed in their 15-foot easement and to an extension of the Earth City Ex-

pressway which did not have limitations of access. They would suffer injury if forced to perform the contract after the changes were made by Realty. A grant of equitable relief would deprive the Hoechsts of the performance to which they are entitled.

■ Appellants also place great emphasis on the failure of the Hoechsts to explain their motives for refusing to accept appellants' tendered performance. Citing *Landau v. St. Louis Public Service Co.*, 364 Mo. 1134, 273 S.W.2d 255 (Mo. banc 1954), appellants contend that the Hoechsts' refusal to explain their motives brings the present case within the rule that one party's significant failure to perform will not prevent specific performance where the other party's refusal to perform was not motivated by the first party's significant failure. 273 S.W.2d at 259. This court does not dispute the rule set forth in *Landau;* however, the instant case is not governed by *Landau* because here there was no evidence concerning the Hoechsts' motives, whereas in *Landau* the facts were undisputed that the refusal to execute a release was motivated by the plaintiffs' desire for more money rather than the defendant's defective tender of the release.

■ Moreover, appellants bore the burden of proof on whether their performance was substantial. *See Marsh v. Richards*, 29 Mo. 99, 104 (1859). It was, therefore, appellants' task to demonstrate that the Hoechsts' refusal to perform was motivated by considerations other than appellants' deviations from the contract.

It is unfortunate that appellants have been unable to deliver on their promises because of the actions of government agencies. However, appellants have no one but themselves to blame. The contract was drawn up and the plat attached to it without obtaining the approval of the various government agencies. The contract could have been written to provide for substitute performance if the interested government agencies should not accept the improve-

ments as planned by the parties, but no provision was made for this contingency.

The judgment is affirmed.

DOWD, C.J., and GAERTNER, J., concur.