Eugene CAMDEN, Plaintiff-Respondent,

v.

DODDS TRUCK LINE, INC., a Corporation, Defendant-Appellant.

No. 8492.

Springfield Court of Appeals.

Missouri.

June 6, 1966.

Richard D. Moore, Newton C. Brill, West Plains, for defendant-appellant.

Granville L. Gamblin, Clayton, William E. Seay, Salem, G. Clifton Beckham, Steelville, for plaintiff-respondent.

HENRY J. WESTHUES, Special Commissioner.

Plaintiff Eugene Camden filed this action in the Circuit Court of Dent County, Missouri, against the defendant Dodds Truck Line, Inc., a Missouri Corporation, to recover damages for an alleged breach of contract. The defendant filed a counterclaim. An application for a change of venue was granted and the cause was transferred to Crawford County, Missouri. A trial before Judge Joseph T. Tate, Special Judge, and a jury resulted in a verdict and judgment for plaintiff in the sum of $11,269.65. From the judgment entered an appeal was taken to the Springfield Court of Appeals.

For a better understanding of the issues involved, we deem it necessary to relate the circumstances out of which this lawsuit arose. The contract which plaintiff claims was breached was negotiated during the months of September and October, 1960. At that time, the defendant corporation was operating a trucking business. Its main office was located in Salem, Missouri. The stockholders were Melbourn Dodds and his three sons, Charles D., Paul D., and David. At that same time, the B & M Express Company, Inc., was also engaged in the trucking business and had its office in Salem. The stockholders of this company were plaintiff Eugene Camden who owned 120 shares, James Y. Vandivort, 60 shares, and Charles T. Hayes, 15 shares. Plaintiff Camden was in charge of the business of the B & M company and negotiated for the sale of the stock. Melbourn Dodds and his son Charles were the principal negotiators on behalf of the Dodds Truck Line.

In this opinion, we shall refer hereafter to the defendant as Dodds, to the B & M Express Company as B & M, and to plaintiff as Camden.

B & M had been operating at a loss for a number of years. The stockholders desired to terminate the business and sought to sell their stock. Negotiation to sell the stock to Dodds resulted in a contract of sale for a consideration of $27,500. It was agreed that Vandivort was to receive, and he was given, a promissory note of Dodds for $6,000 for his 60 shares. Hayes was given a promissory note for $1,500 for his stock. The contract provided that the accounts payable and

the accounts receivable of B & M "shall be computed and the difference between said accounts payable and accounts receivable shall be determined, and the difference thereof shall be deducted from the said purchase price of Twenty-seven Thousand Five Hundred Dollars." Camden received payments of $7,636.33. Camden testified the difference between the accounts payable and accounts receivable amounted to more than $9,500; that, therefore, the balance due him for the stock was about $3,000. In his petition, Camden stated that he was a de facto trustee for the creditors of B & M; that Dodds had agreed to pay the creditors but had not done so; that, therefore, he, Camden, had been damaged in the sum of $11,288.17 for which he prayed payment.

Dodds' counterclaim was based on the theory that Camden had misrepresented the financial condition of B & M; had permitted the charter of B & M to be forfeited as of January 1, 1961, for failure to file reports with the Secretary of State; had refused information necessary to transfer an ICC permit from B & M to Dodds and had thus prevented the consummation of the contract of sale. Dodds asked for a judgment for the amount it had been damaged, that is, the amount paid Camden, $7,636.33.

At the trial, and in this Court, Camden's theory of recovery was, and is, that he and his fellow stockholders of B & M fully performed their contract and, therefore, he, Camden, should be paid the balance due on his shares of stock; further, that since Dodds had not paid all of the creditors of B & M, he, Camden, is entitled, as a de facto trustee for the creditors, to have a judgment against Dodds for the balance due the creditors.

Defendant Dodds' theory was, and is, that Camden was responsible for making it impossible to complete the contract and therefore Dodds should be entitled to recover the amount paid. Defendant further contends that, in any event, Camden is not entitled to

a judgment against Dodds for any amount that B & M owes to creditors.

We are of the opinion that this latter contention must be sustained. Having taken this view of the case, it will not be necessary to make a detailed statement of the evidence and issues which were submitted to the trial judge and jury.

During the time of the negotiations for the sale of the stock, three separate contracts were prepared and executed. The first was on September 27, 1960. It contained a proviso that "It is mutually agreed and specifically convenanted that the terms of this contract shall be contingent upon the ICC issuing a certificate of public convenience and necessity to the Dodds Truck Line covering present intra state operating rights now held by the B & M Truck Line, * * *."

On September 28, 1960, a second contract was signed. It did not contain the proviso above quoted from the first contract but did contain the following provisions: "It is mutually agreed by and between the parties hereto that this agreement shall be submitted to the Public Service Commission of the State of Missouri, and that upon the approval of the terms and conditions set forth herein, this agreement shall be closed at the office of William E. Seay, Attorney at Law, Salem, Missouri."

Then, on October 18, 1960, a third contract was executed. In this contract no reference was made to either the ICC or the Public Service Commission. However, a new provision was inserted disposing of all of the B & M equipment. In substance, it stated that in addition to the shares of stock, Dodds was to receive one Chevrolet tractor and one Fruehauf refrigerated trailer. All other equipment was to be the property of Camden. The contract was signed on November 1, 1960.

Dodds took possession of the tractor and the trailer and Camden took possession of the balance of the equipment of B & M and

disposed of it to his own use, leaving B & M no equipment.

The evidence disclosed that Dodds did not possess an ICC permit to transport freight beyond the state line. Dodds did haul interstate freight shipments from various points in Missouri to St. Louis, Missouri, but at that point the shipments were transferred to a hauler with an ICC permit. It was in evidence that a change in the rules of the ICC was contemplated, which change would prohibit Dodds from hauling interstate freight within the state.

B & M did have an ICC permit. One of the purposes of Dodds' acquiring B & M was to have an ICC permit so Dodds could transport interstate shipments. Dodds claimed that in October, 1960, a temporary arrangement was made between Camden and Dodds. In substance, it was that pending a transfer of the ICC permit of B & M to Dodds, Dodds would haul interstate shipments under B & M waybills; that for this purpose B & M would keep the freight office open for business. Plaintiff Camden testified that the contract was closed on November 1, 1960, at the office of Mr. Seay; that the stock was given to Charles Dodds; that Dodds gave the stock to Seay and told him not to fill in the names until he had a talk with his brother; that at that time he, Camden, was paid $7,000 and notes were delivered to the other stockholders of B & M.

The evidence disclosed that the three shareholders of B & M were also directors of that corporation. These directors did not resign as directors and no new directors were elected. Camden, Vandivort, and Hayes testified that they considered their office as directors ended when they delivered their shares of stock to Dodds.

Charles Dodds testified that he did not receive the stock of B & M. He further testified that during the time the temporary arrangement of hauling freight was in effect a representative of the ICC issued a stop order because the manner of operation was illegal; that because of this no application for a transfer of the ICC permit was or could be made. Charles Dodds testified that he did not learn of the financial condition of B & M until after the contract of sale had been signed. Dodds also claimed that Camden failed to keep the office of B & M open as agreed and failed to furnish information necessary to have the ICC permit transferred; further, that Camden failed to file reports, as required by law, with the Secretary of State, and permitted the charter to be forfeited. Dodds did finally, in 1962, apply for a transfer of the ICC permit but it was denied.

Camden and other stockholders of B & M testified that Dodds took over the business of B & M and served the customers formerly served by B & M.

Camden stated that Dodds agreed to assume the burden of having the ICC permit transferred and that through the neglect of Dodds the permit was not granted.

It may be stated that Dodds introduced evidence tending to prove that the actions of Camden were the cause of the contract not being consummated and the ICC permit not being transferred. It may also be stated that Camden introduced evidence that Dodds was at fault and had abandoned the contract without cause while retaining the benefits of the contract. It was agreed that B & M had been losing money for a number of years and was in financial difficulty. Dodds claimed not to have known of this while Camden claimed he had so informed Dodds before any contract had been signed.

There was much more evidence introduced, pro and con, as to various actions and conduct of the parties. What we have related should be sufficient to determine the legal issues in the case.

The trial court submitted the case to the jury by instructions authorizing a verdict for plaintiff if the jury found that plaintiff had performed his obligations under the contract and defendant had repudiated the contract without cause. The jury was also instructed that if plaintiff had caused the

contract not to be consummated, then a verdict for the defendant was justified.

In brief, Dodds contends that Camden's theory of recovery as to the amount B & M owed creditors was based on his claimed trusteeship for the benefit of creditors and that Camden may not do this without joining the other members of the board of directors of B & M.

Camden's contention, as stated in his brief, is that "Plaintiff, Eugene Camden, being the only shareholder of B & M Express Co., Inc., entitled to any interest in the corporate property, other than unpaid creditors at the time he took over the property and having received the property under the circumstances in evidence held property as trustee for such creditors of B & M, and was the proper party to pursue this action against the defendant, as a 'de facto' trustee. As such 'de facto' trustee he had the sole right to proceed against defendant when the property became subject to the claims of creditors. Sec. 351.525, V.A.M.S.; 90 C.J.S. Trusts § 245, pp. 216–217."

It may be that Camden holds whatever property of B & M he received, by virtue of the contract of sale of his stock, in trust for creditors of B & M. However, that does not give him the right to file suit in his own name to recover the amount B & M owed to creditors. Camden's suit was not filed on behalf of the creditors as a statutory trustee. In fact, the suit was filed in Camden's own name on the theory that he may eventually be compelled to pay some of the creditors. Until Camden has paid such creditors, he has not been damaged. In his brief, Camden cited Sec. 351.525, V.A.M.S. That section provides that in cases where a forfeiture of a charter occurs because of a failure to file reports that " * * * the directors and officers in office when such forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; and

such trustees as such shall have power to sue for and recover the debts and property due such corporation, describing it by its corporate name, and may be sued as such; and such trustees shall be jointly and severally responsible to its creditors and shareholders of such corporation to the extent of its property and effects that shall have come into their hands."

■ In 19 C.J.S. Corporations § 1744, p. 1511, the duties of such trustees are stated to be "The trustees provided for by these statutes should act as a group, not individually, and should transact the business as trustees, not in the name of the corporation. Their duty is to dispose of the company's property, collect all its credits, including what they themselves owe, pay its debts, including their rightful claims against it, and distribute the balance among the stockholders." That rule is supported by Missouri cases. See Clark Estate Co. v. Gentry, 362 Mo. 80, 240 S.W.2d 124, l.c. 127(2); Bruun v. Katz Drug Co., 351 Mo. 731, 173 S.W.2d 906, l.c. 907, 910; Turner v. Browne, 351 Mo. 541, 173 S.W.2d 868, l.c. 875(13); Watkins v. Mayer, Mo.App., 103 S.W.2d 569, l.c. 571, 572(2) (3).

■ In his brief, plaintiff stated that in the early part of November, 1960, Dodds repudiated the contract of sale of stock. The charter of B & M was forfeited on January 1, 1961. Plaintiff, Vandivort, and Hayes were the directors of B & M at that time. It is apparent that Camden may not maintain a suit in his own name against Dodds as a trustee to recover the amount B & M owes creditors. On a retrial, plaintiff's recovery should be limited to the amount due him on the sale of his shares of stock.

■ Only one of the other points briefed need be considered. To prove the amount due creditors, Camden introduced exhibits 9 and 10. Exhibit 9 purported to be a list of accounts receivable and exhibit 10, a list of the accounts payable. These lists appeared to be copies and Dodds objected

to their introduction and their being used to refresh Camden's memory. There was no evidence to show the accuracy of the amounts appearing on these exhibits and the source of the lists was not shown. On a retrial, the accounts payable and accounts receivable should be proven by proper evidence. They are immaterial except to show the balance due Camden on his shares of stock.

The judgment of the trial court is hereby reversed and the cause remanded. It is so ordered.

PER CURIAM.

The foregoing opinion of HENRY J. WESTHUES, Special Commissioner, is adopted as the opinion of this court, and the judgment for plaintiff is reversed and the cause is remanded.

STONE, P. J., and DONNELLY, Special J., concur.

HOGAN, J., not participating.