INTEGRITY INSURANCE
COMPANY, Appellant,

v.

TOM MARTIN CONSTRUCTION COMPANY, INC., and Alan B. Feingold/Architects, Inc., Respondents.

No. WD 40688.

Missouri Court of Appeals,
Western District.

Feb. 14, 1989.

Robert O. Jester, Kansas City, for appellant.

Gene C. Morris, Steven G. Piland, Kansas City, for Tom Martin Const. Co., Inc.

Sharon Weedin Siefkas, Kansas City, for Alan B. Feingold/Architects, Inc.

Before LOWENSTEIN, P.J.,
TURNAGE, J. and COVINGTON,
Special Judge.

LOWENSTEIN, Presiding Judge.

The following overview of this case is first presented: an insurance company settled with an injured plaintiff, who had successfully sued its' corporate insured along with several other tortfeasors who were dismissed; the insurance company attempted to take an assignment from its then dissolved corporate insured and filed this suit against other tortfeasors for indemnity and contribution. A key question in this case is the validity of the assignment from the dissolved corporation, which impacts on the insurance company's status as the real party in interest.

This appeal of Integrity Insurance Company (Integrity) follows summary judgment granted to the defendants Tom Martin Construction Company (construction company), and Alan B. Feingold/Architects, Inc. (architect). The genesis of this case grew out of injuries and car damage suffered by a Ms. Asher in the parking lot of a shopping center, owned by Broadway–Valentine Center, Inc. (Broadway–Valentine).

Many of the following facts are found in *Asher v. Broadway–Valentine Center, Inc.*, 691 S.W.2d 478 (Mo.App.1985). Asher's car fell into a hole in the parking area. She sued Broadway–Valentine, the Broadway National Bank (bank) and the construction company, claiming improper construction of a pneumatic tube for the bank, which ran under the parking lot surface, caused her accident. The construction company was granted a directed verdict at the close of Asher's case. *Id.* Asher dismissed her claim against the bank, but it stayed in the case because Broadway–Valentine had filed a cross-claim against it founded on an indemnity clause in a lease agreement between the two (bank being a tenant of Broadway–Valentine). The trial court gave the bank a directed verdict on the cross claim. Asher obtained a jury verdict as against Broadway–Valentine, the only remaining defendant, for $75,000 for personal injuries and $500 for property damage. The trial court set aside the judgment and ordered a new trial. Asher appealed that decision but did not contest the directed verdict in favor of the construction company. Broadway–Valentine, however, appealed the directed verdict in favor of the construction company as against Asher.

This court held: 1) that it could not hear Broadway–Valentine's appeal concerning the directed verdict in favor of the construction company because Asher had not appealed that portion of the verdict and because Broadway–Valentine had *not* filed a cross-claim against the construction company it was not an aggrieved party, *id.* at 481, and 2) that Asher's verdict against Broadway–Valentine should be re-instated. *Id.* at 483, 485.

While the just described appeal was pending: 1) Broadway–Valentine filed for voluntary dissolution of its corporate charter; 2) its president and sole director died; and 3) the secretary of state issued a certificate of dissolution.

After the appeal Asher settled with Broadway–Valentine and Integrity paid her $71,250. Asher executed a release which reserved to Broadway–Valentine any cause of action it might have arising out of her suit. Integrity then obtained an assignment from Janet Rhoden, the wife of the deceased sole director of Broadway–Valen-

tine, of any chose in action Broadway–Valentine might have against the construction company, the bank, or the architect. Then Integrity brought this suit for indemnity and contribution against the present respondent defendants and the bank to recover the money it paid out to Asher. The bank obtained a summary judgment in the present suit, but Integrity has dismissed the appeal as to the bank, so only the construction company and the architect are involved in this appeal.

Basically, Integrity contends the defendants contributed to Asher's accident by poor construction techniques and practices when they installed the large corrugated tube under the shopping center lot. All the defendants moved for summary judgment. The reasons given in the motions included that: the insurance company was not a real party in interest; the insurance company should be collaterally estopped from bringing suit; or that principles of res judicata should apply. The trial court granted summary judgment without findings or conclusions, none having been requested.

The events are set out in this time frame.

March 3, 1979 Asher is injured in Broadway–Valentine Center parking lot.

March 12, 1984 Jury verdict for Asher. Judge grants new trial.

April, 1984 Asher appeals.

July 2, 1984 Broadway–Valentine files for dissolution.

July 13, 1984 Clark Rhoden estate opened.

September 14, 1984 Articles of Liquidation filed, Certificate of Dissolution issued by Secretary of State. The Articles of Dissolution listed the officers as Clark Rhoden, president; Janet Rhoden, vice president; Charles Randall, secretary-treasurer; and Charlotte Stein, assistant secretary.

May 14, 1985 New trial overturned on appeal, judgment re-instated in favor of Asher against Broadway–Valentine; affirmed directed verdict in favor of construction company.

April 3, 1986 Janet Rhoden assigns Broadway–Valentine's rights arising from Asher suit to Integrity. She signs document *as personal representative of*

*her deceased husband,* the sole director.

The record before this court must be construed in a light most favorable to Integrity, the party against whom the summary judgment was rendered, to determine whether there is a genuine issue of material fact and whether the prevailing party is entitled to judgment as a matter of law. Rule 74.04; *Miller v. Kruetz,* 643 S.W.2d 310, 312 (Mo.App.1982).

## I.

The threshold question on appeal is whether Integrity is the proper party to bring this suit. If Janet Rhoden's assignment on behalf of Broadway–Valentine was not valid, as the construction company and architect contend, then Integrity could not bring suit in its own name—Broadway–Valentine would retain the exclusive right to bring suit. *State Farm Mut. Auto. Ins. Co. v. Jessee,* 523 S.W.2d 832, 834 (Mo.App. 1975).

According to the terms of dissolution by *voluntary* action filed by Broadway–Valentine, the officers (Clark and Janet Rhoden as well as Charles Randall and Charlotte Stein) were authorized to discharge the liabilities and obligations of the corporation, and take such other steps as were necessary to effect the dissolution and liquidation of the corporation. Having performed those tasks, Janet Rhoden, as vice-president filed the Articles of Liquidation and the Missouri Secretary of State issued the Certificate of Dissolution for Broadway–Valentine.

Under § 351.525(4), RSMo 1978, when a corporation forfeits its charter, the officers and directors in office when the forfeiture occurs become trustees of the corporation. *Clark Estate Co. v. Gentry,* 240 S.W.2d 124 (Mo.1951), cert. denied, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951). Although § 351.525 concerns an *involuntary* dissolution, such as failure to file an annual franchise tax report or designate a registered agent, the case law in that area (as it concerns how statutory trustees must act)

sheds much light onto the present controversy.

In *Clark Estate, supra,* the Missouri Supreme Court stated:

> On the day of the forfeiture, the company's very being as a legal entity was destroyed and from that date the officers and directors of the dissolved corporation became statutory trustees of its affairs for purposes stated in the statute ... Among the statutory rights forfeited was that of suing as a corporation ... The corporation could no longer sue in its own name. Having no legal entity it could not be a party plaintiff or defendant at law or in equity. The right to assert its claims against these defendants was vested by law exclusively in the trustees. Only they—as such trustees, in their own names in behalf of the corporation, in their representative capacity—were entitled to institute the action filed on March 6, 1930.

*Id.* at 127 (citations omitted).

In *Moore v. Matthew's Book Co., Inc.,* 597 F.2d 645 (8th Cir.1979), the court was confronted by the issue of whether all statutory trustees had to be joined in an action pursued by a corporation which had forfeited ' its charter. The court, interpreting *Clark Estate Co. v. Gentry, supra,* decided *all* the trustees had to be joined in the suit or adequate reason had to be given to explain their absence. The court wrote: "Whatever right of action for damages belonged to the corporation at the time of the forfeiture vested in all the statutory trustees jointly in their representative capacities...." *Moore,* 597 F.2d at 647. Therefore, one statutory trustee could not bring an action on behalf of a defunct corporation without joining all the other statutory trustees, unless an adequate reason was given explaining their absence. *Id.* See also *Camden v. Dodds Truck Line, Inc.,* 404 S.W.2d 233, 237 (Mo.App.1966) ("The trustees provided for by these statutes [§ 351.525] should act as a group, not individually ...") (quoting 19 C.J.S. Corporations § 1744, p. 1511). The reasoning of *Moore* was followed in *Erb v. Johannes,* 684 S.W.2d 445, 448 (Mo.App.1984). In

that case it was held that the right to defend against a claim by the creditor of a corporation in forfeiture and the right to appeal that decision vests in the statutory trustees jointly. An adequate explanation or excuse must be given before any trustee will be excused from such a suit. *Id.*

Integrity would have this court believe that Clark Rhoden as the sole director was the sole statutory trustee of the dissolved Broadway–Valentine Corporation. Moreover, Integrity states that when Clark Rhoden passed away all his rights and obligations (as statutory trustee of Broadway–Valentine) passed to his personal representative (ie. Janet Rhoden who would stand in her late husband's stead). Neither assertion is correct.

■ First, the confusion as to the statutory trustee issue stems from a conflict between a Missouri statute and a Supreme Court rule. According to § 507.100(4), RSMo 1978:

> When a corporation has been sued and served with process or has appeared while in being, and is thereafter dissolved or its charter forfeited, the action shall not be affected thereby and any judgment obtained shall have the effect of a judgment against *the last board of directors, in a representative capacity,* although the members of the board were not joined in the action. (emphasis added).

Rule 52.13(e) concerning substitution of parties states:

> Dissolution of Corporation. When a corporation has been sued and served with a process or has appeared while in being, and is thereafter dissolved or its charter forfeited, the action shall not be affected thereby and any judgment obtained shall have the effect of a judgment *against the directors and officers in office when any such dissolution or forfeiture occurs, in their representative capacity,* although they were not joined in the action. (emphasis added).

Under the Rule, the Asher judgment was reinstated against both the director and officers of Broadway–Valentine. Under the statute, the Asher judgment would be

reinstated against just the director. In *State ex rel. Peabody Coal Co. v. Powell*, 574 S.W.2d 423, 426 (Mo. banc 1978), the court stated:

> Mo. Const., art. V, § 5 provides: "The supreme court may establish rules of practice and procedure for all courts. The rules shall not change substantive rights ..." Where such a rule adopted by this court under the express authority of the constitution is inconsistent with a statute and has not been annulled or amended by later enactment of the legislature, the rule supersedes that statute. *State ex rel. Bone v. Adams*, 365 Mo. 1015, 291 S.W.2d 74, 77 [ (Mo.1956) ]; *State v. Fleming*, 451 S.W.2d 119, 121 (Mo.1970); *State v. King*, 380 S.W.2d 370, 375 (Mo.1964).

While the statute in question has been amended since Rule 52.13(e) was adopted, the statutory changes did not affect who in the corporation could sue or be sued. By operation of the rule, the Asher judgment against the defunct corporation was automatically re-instated against the last directors and officers as trustees of Broadway–Valentine in their representative capacities. *SAB Harmon Industries, Inc. v. All State Bldg. Systems, Inc.*, 733 S.W.2d 476, 483 (Mo.App.1987).

Given the reasons set out in *Clark, Moore* and *Erb*, all the last officers and directors, as statutory trustees would have had to have joined (or adequate justification or excuse given why they didn't) before the assignment to Integrity would have been valid.

■ Integrity's assertion that Clark Rhoden's powers as a trustee somehow passed to his personal representative is also not supported by the law. Even if Clark Rhoden had been sole statutory trustee for the Broadway–Valentine, his position was only *representative* in nature. *Nudelman v. Thimbles*, 40 S.W.2d 475 (Mo.App.1931). Any authority he had as trustee ceased to exist when he did. Integrity could have sought equitable relief to protect its interest by having a trustee named as a substitute. That, however, was not the case. Thus, the trial court correctly granted summary judgment in favor of the two defendants since the assignment was incomplete and Integrity was not the real party in interest.

## II.

■ The decision in favor of the construction company is also foreclosed on collateral estoppel (issue preclusion) grounds.

To invoke the doctrine of collateral estoppel, four elements must be present: (1) the issue decided in the prior litigation is identical with the issue in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with the party to the prior adjudication, and; (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Kansas City Area Transp. Authority v. 4550 Main Associates, Inc.*, 742 S.W.2d 182, 189 (Mo.App.1986).

As to those elements, the issue of the construction company's negligence as to Asher was decided in the company's favor in the *Asher* case. Broadway–Valentine, by not chosing to plead for contribution on a comparative basis, *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), let that issue die. Because the construction company was not responsible to Asher, there is nothing further to litigate on that issue. The directed verdict at the close of Asher's case constituted an adjudication on the merits.

The third criteria, whether the party against whom the collateral estoppel is asserted was a party on in privity with a party to the prior adjudication, is also met because Integrity was the liability insurance carrier for Broadway–Valentine and provided a defense and indemnification pursuant to the terms of its insurance contract.

The last question to be decided is whether Integrity had a full and fair opportunity to litigate the issue in the prior suit. In

deciding this question, four factors are considered:

1. Whether the person against whom estoppel is asserted had a strong incentive to litigate the first action;

2. Whether the second forum may afford the party against whom estoppel is asserted procedural opportunities not available in the first action;

3. Whether the prior judgment, upon which estoppel is based, may be inconsistent with one or more prior judgment; and

4. Whether the forum in the first action may have been substantially inconvenient to the party against whom estoppel is asserted.

*Bi–State Development Agency v. Whelan Sec. Co.,* 679 S.W.2d 332, 337 (Mo.App. 1984).

First, because Integrity provided the defense for Broadway–Valentine it had the same incentive that it would have had if it was the named defendant. As a matter of fact, during the Asher case Broadway–Valentine attempted to establish that poor construction techniques caused the void to develop under the parking lot. Second, the forum where Integrity brought suit is the same forum where Asher litigated her claim. Third, the judgment in the Asher case is not inconsistent with any prior judgment. Finally, because the forum is the same, so too is the inconvenience factor.

Given that Integrity, as liability insurance carrier for Broadway–Valentine provided a defense and ultimately paid the judgment obtained by Asher it is fair that Integrity be estopped from bringing the present action against the construction company.

THE JUDGMENT IS AFFIRMED.