Doris LAZARE, Jerome M. Norber and
Fern Norber, Appellants,

and

Dan Rondberg and Lois Lee Rondberg,
Plaintiffs,

v.

Allan HOFFMAN and Sidney Stone,
Respondents.

No. 53950.

Supreme Court of Missouri,
Division No. 2.

Sept. 8, 1969.

Marvin M. Klamen, Klamen & Weisman, Clayton, for appellants.

Edward A. Dubinsky, Dubinsky & Duggan, St. Louis, for respondents.

STOCKARD, Commissioner.

Plaintiffs Doris Lazare, Jerome Norber and Fern Norber have appealed from the judgment entered by the circuit court in their suit to quiet title to real estate and on defendant's counterclaim in which specific performance of a contract for the conveyance of real estate was decreed.

On January 12, 1967, Allan Hoffman, a "real estate developer" (hereafter referred to as "purchaser" or respondent"), entered into a contract for the purchase for $50,000 of a tract of land in St. Louis County, referred to as "Lot A of Cross Keys." The agreement was signed by Dan Rondberg and J. M. Norber (hereafter referred to as "sellers"), who also were real estate developers. At the side of Norber's signature there is what appears to be the word "partner," but nowhere in the agreement does the name of a partnership appear and there is no statement that a partnership is the seller. The agreement was subject to the "sales conditions and closing practices of the real estate board of Metropolitan St. Louis" printed on the back of the instrument, which included the provisions that "title shall be merchantable" and that the "seller shall furnish general warranty deed" subject to deed restrictions, easements, rights of way of record and zoning regulations. The agreement was also subject to several special agreements typed on the back of the instrument, one of which was the following:

"At the time of closing, purchaser agrees to grant easement to seller for Cross Keys Apartment rental sign at a location to be agreed upon between purchaser and seller on planting area adjacent to Cross Keys Drive near New Halls Ferry Road. However, said rental sign is not to conflict with building and/or parking plans of purchaser. Further said rental sign is to be approved by the City of Florissant as to size and location."

Purchaser obtained a certificate of title issued by the Land Title Insurance Company of St. Louis, dated January 21, 1967, which showed that the title to the real estate was vested in "Dan Rondberg and Jerome M. Norber, doing business as Jaccard Development Company, a partnership," subject to a deed of trust, a lien for taxes, and described easements. On February 11 the purchaser caused a notice of the contract for the sale to him of Lot A of Cross Keys to be recorded in the office of the Recorder of Deeds, St. Louis County. On February 14 Mr. Marvin Klamen wrote the purchaser that Jaccard Development Company had retained him to represent it "at closing," and he stated that the purchaser should forward to him "verification of compliance with special agreements, of release of ground satisfactory to sellers, along with closing statements and proper easements for * * * inspection," and he stated that he then would be "glad to be at the appointed time for closing." He concluded that unless the purchaser could forward the items "showing full compliance with the contract," he should "release title from defect immediately [apparently referring to the recordation of the contract of sale]; otherwise it will be necessary to sue you for slander of title." However, the special agreements typed on the printed form of contract did not call for all of this action on the part of the purchaser. At the "time of closing" the purchaser was to grant an easement for the "rental sign," and it was proper that this be prepared in advance. However, by the other special agreements the "seller" was to secure a building permit and turn over to the purchaser the architectural and engineering plans, and he was also to guarantee "said plans to be fully paid." It was also sellers' duty to obtain the release of the land from the existing deed of trust. We note that at trial Mr. Klamen's cross-examination of the purchaser indicated that the sellers, or at least one of them, considered the purchaser to be an intermeddler when he attempted to assist in working out an arrangement for the release.

On March 3 sellers filed a suit in the Circuit Court of St. Louis County against purchaser for slander of title. On March 7, sellers executed and caused to be recorded a deed purporting to convey title to the real estate to Doris Lazare, who is described in the petition to quiet title as "nominee and title holder * * * to act as straw party for and on behalf" of the sellers. On March 9 the purchaser notified the sellers that the closing date for the transfer to him of the title to the land would be March 15, and that he would expect the "respective spouses" of sellers to be present at closing to join in the execution of the general warranty deed. On the following day, although the deed to Doris Lazare had been executed three days earlier, sellers replied by letter to the purchaser that "On February 14th our counsel requested of you a verification of compliance with special agreements, including satisfactory release and proper easements," and "We expect to receive advance showing of this compliance before attendance at any purported closing." In the letter it was further stated: "Your letter in addition demands the signatures of spouses; nowhere in the contract is there such a requirement. Your letter demands actions in excess of contract requirements. The partnership is the one offering the sale, not the partnership plus spouses." On March 15 the purchaser was at the designated place for closing with the purchase price and a form of an easement for the rental sign, which form had previously been prepared by or with the cooperation of sellers' attorney. Also present was a representative of the holder of the note who was ready to release the previously existing deed of trust on the property. Neither seller appeared at the closing either in person or by representative.

On April 5, 1967, Doris Lazare, the grantee in the deed dated March 7, and the sellers and their respective spouses filed suit against the purchaser and a Sidney Stone (who apparently had no interest in the land and there is no issue as to his dismissal from the suit) to quiet title in which they prayed that the court find that Doris

Lazare "is the sole nominee and owner of the said real estate." The purchaser filed a counterclaim in three counts: the first for specific performance of the contract of sale; the second an alternative count for recovery of the earnest money and damages; and the third for damages for abuse of judicial process. There are no issues on this appeal as to Counts II and III. The trial court entered judgment that "plaintiffs are not entitled to recover on their petition to quiet title," and that the purchaser was entitled to specific performance of the contract of sale. By its decree it directed that upon the payment by the purchaser of the adjusted contract price, and upon the delivery by the purchaser to the sellers of an "easement deed" for the "rental sign," the sellers and their respective spouses and Doris Lazare should by warranty deed convey their interest in the property to the purchaser. Following the overruling of a motion for new trial filed on behalf of all the plaintiffs, "Doris Lazare, Jerome Norber and Fern Norber" filed a notice of appeal, and they shall hereafter be referred to as appellants. Dan Rondberg and his spouse did not appeal. The notice of appeal does not mention Jaccard Development Company, and there is no contention that Jerome Norber, as a partner, was acting on behalf of the partnership.

Appellants filed a motion in this court to supplement the transcript to show events which occurred subsequent to the filing of the transcript. That motion is denied. However, for general information purposes we note that a second appeal has been filed in this court by appellants arising out of the subsequent events, and we may take judicial notice of our own records. The transcript in that second appeal indicates that in this appeal appellants did not file a supersedeas bond, and that the purchaser requested the trial court to enforce its decree of specific performance. Dan Rondberg and his spouse then executed a general warranty deed and deposited it with the trial court, and that court, after a hearing on the motion to require performance, entered a new judgment in which by its decree it con-

veyed to respondent the interest of Doris Lazare, Jerome Norber and Fern Norber. The only issue with which we are concerned on this appeal is the correctness of the judgment from which this appeal was taken.

Appellants first contend that the trial court erred in decreeing specific performance "inasmuch as said purported contract is, according to its terms, unenforcible." Appellants contend this is so because there is a conflict between the purported contract terms and the zoning code of the City of Florissant which results (a) in the contract being "illegal and impossible to perform according to its terms" and in having a "failure of an express condition and term," and (b) the parties "failed to agree to all essential details and terms." The statement of certain additional facts is necessary.

By reason of the terms of one of the "special agreements" typed on the back of the form of the contract the "seller" was to obtain a "building permit for purchaser for a 'strip store' * * * as per plans of Charles O'Keefe, Architect," and it was stated that at the time of the execution of the contract those plans had been tentatively approved by the Florissant Planning Commission. Mr. Joseph Tucker, Jr., building inspector for the City of Florissant, testified that the city zoning ordinance established a "set back line" of 40 feet, and that a "sign ordinance" provided that no "ground sign" could be placed nearer to the street than the set back line, except that the ordinance also provided that under "Unusual or special circumstances, the Building Commissioner may permit the erection of signs up to one hundred square feet in areas not otherwise permitted provided the applicant shall first obtain approval of the Planning and Zoning Commission for erection and maintenance of such nonconforming signs." The building plans for the "strip store" were introduced in evidence, but they have not been deposited as an exhibit with this court. Mr. Tucker testified, however, that those plans had been finally approved by the Planning and Zoning Commission, and there was no testimony or evidence to the effect

that there had been any change in the plans subsequent to the tentative approval. Mr. Tucker also testified that there was no portion of the "planting area" shown on those plans fronting on Cross Keys Drive which extended as far as 40 feet from the street. It is apparent that at the time of the execution of the contract no "rental sign" could be erected on the "planting area" except on the basis that the sign could qualify under the "unusual or special circumstances" exception to the sign ordinance.

It is well established that "All persons who contract with reference to a subject-matter within the limits of a municipality as to which there are police regulations [such as zoning ordinances] are charged with knowledge of and are presumed to know the provisions of the regulations and to have entered into such contracts with reference thereto, * * * and such provisions become an integral part of the contract." Sachs Steel & Supply Company v. St. Louis Auto Parts & Salvage Company, Mo.App., 322 S.W.2d 183, 186. See also Kazwell v. Reynolds, 250 Ill.App. 174; Millman v. Swan, 141 Va. 312, 127 S.E. 166; and cases cited in the annotation at 175 A.L.R. 1055 et seq. There is no evidence that a request for the erection of a sign on the "planting area" was made, or if made that it was refused. Our analysis of the evidence is that after the sellers had obtained tentative approval of plans for a "strip store," which provided for a "planting area" all of which was located within 40 feet of the streets, and after they either had actual knowledge or were charged with knowledge of the "sign ordinance" which provided, except in "unusual or special circumstances," that a "ground sign" (and it is apparently admitted by the parties that the proposed "rental sign" was such a sign) could not be located nearer to the street than 40 feet, they contracted to sell Lot A of Cross Keys and receive in return as part of the consideration an easement from the purchaser for the erection and maintenance of a sign in an area where they knew or are charged with knowledge that it could not be erected except on the basis of a nonconforming sign within the exception provided for in the ordinance. The issue thus presented is whether the appellants should now be excused from conveying the property to the purchaser for the reasons they assert.

As noted, appellants contend that the contract is illegal and impossible of performance, and that the parties failed to agree on all essential terms. This obviously is not so. It must be assumed that the parties entered into the contract with reference to the provisions of the ordinances. Therefore, sellers entered into the contract with knowledge that they could not erect a "rental sign" on the "planting area" pursuant to an easement from the purchaser except on the basis that it constituted "unusual or special circumstances," and they deliberately took their chances that such approval might not be obtained. When the purchaser offered to pay the agreed purchase price and grant an easement to locate a "rental sign" on the "planting area," the sellers were being offered all they contracted for. It was then their responsibility to obtain approval from the City of Florissant to erect the sign, and failure to obtain that approval does not excuse performance on their part.

At the time of closing purchaser had a form of easement drafted by counsel for sellers in which the location of the sign was fixed immediately adjacent to Cross Keys Drive. The trial court decreed that sellers accept that easement. However, there is no evidence that this location was specifically approved by sellers, and it may be that the City of Florissant would not approve the sign at that location but would at another. The purchaser testified that he told the sellers to "pick the spot" for the sign, and that if it "did not get in the way of the building or the parking and the City of Florissant approved it was all right" with him. We conclude that the decree of the trial court was too restrictive in fixing the location at a specific place. The decree should be modified to provide for an easement to the sellers to locate a "rental sign"

on the "planting area" at a location selected by the sellers but which will not interfere with the building or with parking.

■ Appellants next contend that the trial court erred in directing specific performance of the contract of sale because the purchaser "repudiated and breached * * * or failed to comply with" the contract by demanding "performance of terms outside of and in addition to" the contract requirements. From the argument portion of their brief we find that reference was intended to two matters. It is first argued that the requirement that the purchaser execute and sellers receive an easement for the "rental sign" in which the location of the sign was specifically described "repudiates entirely any possibility of an agreement on that location since it was never presented to either plaintiff [seller], or their counsel, for consent and agreement." Our modification of the decree of specific performance, as previously directed, eliminates this contention. The modification will result in an agreement of the parties as to the location of the sign. The purchaser says that any location on the "planting area" which does not interfere with the building or with parking is agreeable to him, and sellers are given the right to select the location within those limitations.

The second argument in support of this point is that respondent breached or repudiated the contract by insisting that sellers "satisfy terms and conditions wholly outside of those terms that had been agreed upon" by demanding that the spouses of the sellers join in executing the warranty deed. This contention is related to the next point in appellants' brief which is that the requirement of the decree that the spouses of the sellers execute the warranty deed "is in direct contravention of the prohibitions of the Statute of Frauds." In this connection certain additional facts are material.

■ On March 3, 1967, following a conference between the purchaser and Mr. Klamen concerning the easement for the "rental sign," Mr. Klamen talked to at least one of the sellers, and possibly both, by telephone, and then told the purchaser that the "deal is off." On the same day the sellers filed suit against the purchaser for slander of title. That suit was based on the theory that the purchaser had slandered their title to the property by recording a notice of the existence of the contract of sale whereby sellers were to convey the property to him. This constituted a repudiation of the contract. Ewing v. Miller, Mo., 335 S.W.2d 154. Four days later on March 7, the sellers executed a deed purporting to convey title to the property to Doris Lazare without any provision that this conveyance was subject to the contract with purchaser. This constituted a further repudiation of the contract. It was thereafter on March 9 that the purchaser requested that the spouses of the sellers execute the warranty deed.

■ We deem it unnecessary to rule whether title to the property was "in the partnership name" or in the "names of all the partners," § 358.100 (all statutory references are to RSMo 1959, V.A.M.S.), or whether any right of the individual partners in the property was subject to "dower * * * or allowances to widows, heirs, or next of kin." See § 358.250. Neither is it essential to determine whether pursuant to § 474.150 there would exist a presumption of fraud of the marital rights of the spouses of the sellers if a general warranty deed had been executed by the sellers alone. Each seller, either as an individual or on behalf of the partnership contracted to give the purchaser a "general warranty deed" conveying merchantable title, which at least meant that the property was not to be subject to any claim of the spouses of the sellers. Nixon v. Franklin, Mo., 289 S. W.2d 82, 87. We shall not attempt to determine whether the spouses had, as a matter of law, any actual or inchoate interest in the land because for the reasons hereafter set forth appellants cannot now justify the refusal of sellers to perform the contract on the basis that the purchaser requested that the spouses of sellers execute the warranty deed.

■ Sellers never offered to the purchaser a warranty deed properly executed by them without the signatures of their respective spouses, and as far as is shown by the record before us the purchaser never refused such a deed. At most, by advising sellers that he expected the warranty deed to be signed by the respective spouses of sellers the purchaser requested more than he was entitled to, and the mere making of such a request is not a breach of the contract which gave the sellers the right to rescind. 17 Am.Jur.2d Contracts § 443; Turner v. McCormick, 56 W.Va. 161, 49 S.E. 28. In our consideration of the merits of this action in equity we refuse to be impressed by appellants' contention that the request by the purchaser, made after the unequivocal repudiation of the contract by sellers, that the spouses sign the warranty deed constituted a breach and repudiation of the contract upon which the sellers can now rely. See Landau v. St. Louis Public Service Company, 364 Mo. 1134, 273 S.W. 2d 255, 48 A.L.R.2d 1200. Finally, as previously noted, the sellers were to convey merchantable title by warranty deed, and this meant that sellers would warrant that no other persons, including their respective wives, would have a claim on the land. However, in their petition to quiet title sellers were joined by their spouses as plaintiffs, and after alleging that the property "was held in the name of Jaccard Development Company," they then alleged that "Lois Lee Rondberg and Fern Norber, respective spouses of said partners, claim or may claim some right, title or interest, into and arising out of said above described real estate although said real estate is not normally [sic] in the name of said spouses." By this pleading appellants admit that the request of the purchaser that the spouses of the sellers execute the deed was not unreasonable under the circumstances. They are now estopped, at least in equity, to contend that the purchaser breached the contract by requesting that the spouses of sellers execute the warranty deed. See 17 Am.Jur.2d Contracts § 365.

■ Although it was a reasonable request on the part of the purchaser that the sellers have their spouses sign the deed, it does not follow that there was a legal duty on the part of the spouses to sign. They were not parties to the contract and had not agreed to execute the deed. We do not agree with respondent that because they joined as plaintiffs in the suit to quiet title they thereby subjected themselves to being required to execute the warranty deed. Sellers could convey the title to the purchaser without the signatures of their spouses. See § 358.100 and § 474.150. If the spouses thereafter make a claim of some interest in the land there then might occur a breach of the covenant of warranty, Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S.W. 480, 14 Ann.Cas. 652, and if so the purchaser would have his legal remedy. But, we can find no authority for the trial court to decree specific performance of a contract as to persons not parties to that contract. The judgment should be modified to exclude from it the requirement that the spouses of the sellers execute the general warranty deed.

■ The final contention of appellants is that the trial court erred in "failing to enter its order quieting title to the premises in question." Citing and relying ·on Pitts v. Pitts, Mo., 388 S.W.2d 337, they contend that in an action to quiet title the court is required to adjudicate the respective interests of the parties to the action regardless of which party prevails. The trial court held that "plaintiffs are not entitled to recover on their petition to quiet title" but that respondent "is entitled to a decree of specific performance * * *." It then set forth specifically the steps which should be taken by the parties. When the judgment is read as a whole it did adjudicate the respective interests of the parties. It is not necessary that any particular language be used. However, since this cause is to be remanded for correction of the judgment, either party may if so advised request the trial court to word its judgment so that it will more clearly reflect compliance with the principle announced in Pitts v. Pitts, supra.

The judgment is affirmed insofar as it decrees that upon the tender by purchaser of the adjusted purchase price and an easement deed, modified as herein provided, Doris Lazare, Dan Rondberg and Jerome M. Norber shall execute a warranty deed to purchaser, but the cause is remanded for the entry of a new judgment incorporating the modifications herein set forth and such other provisions as necessary to have compliance with the terms of the contract for the sale of the land.

It is so ordered.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN and FINCH, JJ., and PALUMBO, Special Judge, concur.

DONNELLY, P. J., not sitting.