Nicholas **LANDOLL,** by his Next Friend, Karen **LANDOLL,** and Karen **Landoll,** individually, Plaintiffs–Respondents,

v.

William **DOVELL,** Defendant–Appellant.

No. 55517.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 25, 1989.

Application to Transfer Denied
Dec. 12, 1989.

Joseph G. Nassif, Coburn, Croft and Putzell, St. Louis, for plaintiffs-respondents.

Allan F. Stewart, Braun, Stewart and Anderson, Clayton, for defendant-appellant.

SIMON, Chief Judge.

Appellant, William Dovell (William), appeals from a summary judgment granted in favor of respondents, Nicholas Landoll (Nicholas), a minor, by his mother and next friend, Karen Landoll (Karen), and Karen, individually, declaring William to be the father of Nicholas and ordering William to pay temporary child support in the amount of $1200.00 per month. On appeal, William contends that the trial court erred in entering its order of summary judgment as to paternity and awarding temporary child support in that: (1) Missouri is not the proper forum for this action under the doctrine of *forum non conveniens* in that all parties reside outside Missouri, there is no legitimate interest in Missouri, and the maintenance of this action constitutes an undue burden on William; (2) genuine issues of material fact remain on the pleadings and affidavits; (3) all necessary parties were not joined; and (4) personal jurisdiction over William was lacking. We affirm in part and reverse and remand in part.

Initially, we note that William's request to strike Nicholas' and Karen's supplemental statement of facts is denied. Karen married John Richard Landoll ("JR") on July 17, 1968. During the course of the marriage, Karen gave birth to three children: Christina Landoll (Christina), born April 3, 1978; John Landoll (John), born August 29, 1980; and Nicholas, the subject of this action, born May 8, 1985.

Karen worked for William at his Ohio motor company from September, 1976 to January, 1982. It was during that period of time that Christina and John were born. Karen and JR later moved to St. Louis, Missouri, where Nicholas was born. Subsequently, Karen, JR, and the children moved to another state.

On July 29, 1986, William, Karen, and the three minor children underwent blood tests at the American Red Cross in St. Louis, Missouri, in an effort to resolve a potential paternity dispute between the parties. A written agreement provided for the taking of blood tests and certain actions by the parties depending on the test

results. The agreement was notarized in St. Louis, Missouri. William denies the execution of this agreement, and further contends that there was no consideration. The results of the blood tests indicated that a 99.96% probability exists that William is the father of Nicholas, and that 99.54% of falsely accused men would be excluded as the father of Nicholas based upon the tests. On June 30, 1987, JR also submitted to a blood test, the result of which positively excluded him from being the biological father of Nicholas.

On April 6, 1987, Nicholas and Karen filed a three count petition in the Circuit Court for the County of St. Louis, Missouri seeking a declaration of paternity: Count I requested the finding of a father-child relationship; Count II requested child support; and Count III requested specific performance of the written agreement. Following service with summons and petition in Ohio, William filed a special entry of appearance for the purpose of contesting jurisdiction on June 9, 1987. Subsequently, William filed a Motion to Quash Service of Summons or in the Alternative to Dismiss for Forum Non Conveniens. William's motions were denied.

Nicholas and Karen moved for summary judgment on the issue of paternity (Count I) and for specific performance of the written agreement (Count III). A copy of the agreement and the affidavit of the Paternity Testing Coordinator for the American Red Cross in St. Louis, Missouri setting forth the results of William's blood tests were attached as exhibits to the motion for summary judgment. Additionally, an award of temporary support was requested. William petitioned our court for a writ of prohibition for want of jurisdiction, which was denied. On that same day, the trial court proceeded on the previously filed motion for summary judgment and request for temporary support. Following a hearing on the motions, the trial court allowed William additional time in which to file any counter affidavits and income and property statements. William filed an answer to Nicholas' and Karen's petition admitting to engaging in sexual relations with Karen and to submitting to a blood test, but spe-

cifically denying the paternity of Nicholas, the time and place of the sexual relations, the existence of an agreement or contract, and the results of the blood tests. William also filed a second writ of prohibition in our court, which was denied.

On August 17, 1987, the trial court sustained the motion for summary judgment on the issue of paternity and ordered William to pay $1200.00 per month as child support *pendente lite* until final judgment. William appealed the summary judgment to our court. We dismissed for lack of a final appealable order.

William sought transfer to our Supreme Court and also filed a writ of prohibition with our Supreme Court on the grounds: (1) of *forum non conveniens;* (2) that the trial court lacked jurisdiction to proceed with the hearing on the motions for summary judgment and temporary support in that neither was ripe for adjudication, William not having had a sufficient time to file responsive pleadings; (3) material issues of fact exist rendering summary judgment inappropriate; and (4) that the trial court lacked the authority to enter an order for child support *pendente lite* in a paternity action. Our Supreme Court granted transfer and issued a preliminary rule for the purposes of determining the authority of the trial court to enter an order for support *pendente lite* in a paternity case and, if such authority exists, whether such an order is appealable upon entry. Upon finding that the trial court is without authority to enter a child support order *pendente lite* in a paternity action, our Supreme Court made its preliminary rule absolute and dismissed William's appeal as moot. *Landoll by Landoll v. Dovell*, 752 S.W.2d 323 (Mo. banc 1988).

On July 26, 1988, Nicholas and Karen filed in the trial court a motion for final judgment of paternity pursuant to Rule 74.01(b). On September 1, 1988, the trial court reentered its prior judgment of August 17, 1987 as final for purposes of appeal, stating that there is no just reason for delay pursuant to Rule 74.01(b). William appeals.

■ Turning to William's contentions of error, we shall address them in their most logical order. In his fourth point, William contends that the trial court erred in entering its order of summary judgment and awarding temporary child support because the trial court lacked personal jurisdiction over him. Initially, we note that "[w]hen the issue of personal jurisdiction over a non-resident defendant is raised, the burden is on the plaintiff seeking to avail himself of the long arm statute to establish a prima facie case for jurisdiction." *Commercial Lithographing Co. v. Family Media, Inc.,* 695 S.W.2d 936, 938[1, 2] (Mo. App.1985). "[I]n order for Missouri courts to exercise personal jurisdiction over a non-resident defendant, the defendant's acts must fall within one of the categories enumerated in the long-arm statute and must constitute sufficient minimum contacts with the state so that the exercise of jurisdiction by Missouri courts satisfies due process requirements." *Medicine Shoppe International, Inc. v. J–Pral Corp.,* 662 S.W.2d 263, 271[14] (Mo.App.1983) (emphasis omitted). The plaintiffs must state sufficient facts in their petition to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. *Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc.,* 747 F.2d 448, 453[7] (8th Cir. 1984). *See also Anderson Trucking Service, Inc. v. Ryan,* 746 S.W.2d 647, 649–50[2, 3] (Mo.App.1988).

■ Section 506.500.1 RSMo 1986 (all further references shall be to RSMo 1986 unless otherwise noted), Missouri's long-arm statute, enumerates the necessary criteria for establishing personal jurisdiction and provides as follows: .

1. Any person or firm, whether or not a citizen of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

The petition alleges that Karen and William entered into a written agreement whereby blood tests were to be performed under the supervision of the American Red Cross in St. Louis, Missouri. The petition alleges that the agreement was signed by Karen and William and executed in Missouri. The petition further alleges that Karen and William engaged in sexual relations in St. Louis, Missouri in August of 1984, and, that as a result of said sexual relations, Karen gave birth to Nicholas in May of 1985. The petition clearly pleads sufficient facts to subject William to jurisdiction within Missouri in accordance with §§ 506.500.1(2) and (6).

■ We now turn to the question of whether William has sufficient "minimum contacts" with Missouri to satisfy due process requirements. In determining the existence of sufficient minimum contacts, the following factors are to be considered: (1) the nature, quality, and quantity of the contacts with Missouri; (2) the relationship of the cause of action to those contacts; (3) the interest of Missouri in providing a forum for its residents; and (4) the convenience and inconvenience to the parties. *Medicine Shoppe,* 662 S.W.2d at 272[16]. The petition alleges that William came to Missouri to engage in sexual relations with Karen, and that these relations resulted in the conception of Nicholas, who is the subject of this action. Additionally, William came to Missouri to execute and perform the disputed written agreement. The blood tests occurred in Missouri. Although Nich-

olas and Karen currently are not Missouri residents, they were Missouri residents at the time of the alleged sexual relations resulting in the conception and the execution of the agreement. Based on the foregoing, we cannot say that the maintenance of this action in Missouri offends "traditional notions of fair play and substantial justice." *M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d 64, 67[1] (Mo.App.1980) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The trial court properly exercised personal jurisdiction over William.

■ In his first point, William contends that the trial court erred in entering its order of summary judgment and awarding temporary child support because Missouri is not the proper forum under the doctrine of *forum non conveniens* in that all parties reside outside Missouri, there is no legitimate interest in Missouri, and the maintenance of this action constitutes an undue burden on William. Initially, we note that a trial court's ruling on a motion to dismiss for *forum non conveniens* is highly discretionary, *Higley v. Missouri Pacific R. Co.*, 685 S.W.2d 572, 576[11, 12] (Mo.App.1985), reviewable only for abuse of discretion. *Blankenship v. Saitz*, 682 S.W.2d 116, 118[4–6] (Mo.App.1984). The doctrine should be applied with caution only upon a clear showing of inconvenience when the ends of justice so require. *Id.* at 117[1, 2]. The factors to be considered are:

(1) place of the accrual of the cause of action;

(2) location of the witnesses;

(3) the residence of the parties;

(4) any nexus with the place of suit;

(5) the public factor of the convenience to and burden upon the court; and

(6) the availability to plaintiff of another court with jurisdiction of the cause of action which affords him a forum for his remedy.

*Besse v. Missouri Pacific R. Co.*, 721 S.W.2d 740, 741[2] (Mo. banc 1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

The cause of action accrued in Missouri, in that it is the place of Nicholas' birth, the execution of the written agreement, and certain blood tests. Any witnesses to the blood tests and any encounters between William and Karen are likely to be in Missouri. Although Nicholas and Karen currently do not reside in Missouri, we cannot say the trial court abused its discretion based on the foregoing factors.

■ In his third point, William contends that the trial court erred in entering its order of summary judgment and awarding temporary child support in that all necessary parties were not joined. William first complains that Karen's husband, JR, should have been joined as a necessary party because, since Nicholas was born during Karen and JR's marriage, JR is the presumed father of Nicholas.

William, however, admitted in an affidavit that it was common knowledge, from statements made by Karen, that she and JR were unable to procreate. Further, blood tests conclusively excluded JR as Nicholas's father. Therefore, the trial court did not err in failing to join JR.

■ William also complains that a guardian ad litem should have been appointed for Nicholas. In support of this assertion, William relies on *J.M.L. v. C.L.*, 536 S.W.2d 944 (Mo.App.1976) for the proposition that: "A guardian ad litem is necessary since the litigation purports to make a 'binding effect on the child's status,' i.e., his legitimacy." *Id.* at 947[6] (citation omitted). Additionally, William relies on *S._____ v. S._____*, 595 S.W.2d 357 (Mo.App.1980) for the proposition that failure to appoint a guardian ad litem in an action involving the rights of a minor child may mean that, because the child is without representation, the child may not be bound by the subsequent judgment.

We have examined both cases and find them to be distinguishable. In *J.M.L.*, the child in question was not joined as a separate party, as is Nicholas in the present case. In the case of *S._____*, the child in question also was not joined as a party, and the custody of the child was at issue. Such is not the case here. Nicholas, through his

mother acting as next friend, is a party to this action, and will be bound by the judgment. Further, the issue of custody is not present in this case. In light of the fact that the "trial court's right to appoint a guardian ad litem is discretionary," *J.L.E. v. D.J.E.*, 675 S.W.2d 456, 459[4] (Mo.App. 1984), we cannot say that the failure to appoint a guardian ad litem for Nicholas was erroneous. Point denied.

▮ In his second point, William contends that the trial court erred in entering its order of summary judgment and awarding temporary child support in that genuine issues of material fact as to William's paternity remain on the pleadings and affidavits. William also contends, in the argument portion of his brief, that Nicholas and Karen have not overcome the presumption that JR is the father of Nicholas, and that the trial court erred in allowing Karen to testify at the hearing on the motion for summary judgment. We shall address these latter two contentions first, initially noting that neither has been preserved for appellate review because neither was stated in the "Point Relied On." "The reviewing court is obliged on an appeal to determine only those questions stated in the 'Points Relied On,' and matters which defendant but casually alludes to in the argument portion of its brief without having stated them under 'Points Relied On' are not preserved or presented for appellate review." *Brokaw v. Brokaw*, 492 S.W.2d 859, 860–1[4] (Mo.App.1973). Since this is a summary judgment, we shall review in our discretion these contentions for plain error, reversing only if we find that manifest injustice or a miscarriage of justice has resulted therefrom. Rule 84.13(c).

▮ Before reaching these contentions, however, we note that it is axiomatic that William, as appellant, has the duty to provide a complete record on appeal for the determination of questions presented to the appellate court. *Morovitz v. Morovitz*, 693 S.W.2d 189, 191[5, 6] (Mo.App.1985). Here, the legal file contains various affidavits and exhibits; some attached to the parties' pleadings and motions; others left adrift merely labelled "Exhibit" and having no court-filed stamp. As we stated in *Hill v. Air Shields, Inc.*, 721 S.W.2d 112 (Mo.App. 1986):

> It is not the function of the appellate court to sift through material furnished by the parties on appeal to determine the exact nature of the evidentiary material submitted to the trial court in a summary judgment proceeding. The preferable course for both the moving and opposing parties to follow in a motion for summary judgment would be to enumerate all [the materials] referred to in the motion and to properly authenticate or certify the documents which they wish the trial court to consider in ruling on the motion. Unless the record reveals that the documents which the parties purportedly relied upon in the trial court were properly made part of the record, we cannot say that they were before the trial court and they are not now before us.

*Id.* at 116[4].

▮ As can best be discerned from the record presented us, the trial court had before it the following: (1) Nicholas' and Karen's original Petition; (2) Nicholas' and Karen's Motion for Summary Judgment and Memoranda in support thereof which relied on: (a) the written agreement; (b) the affidavit of the Paternity Testing Coordinator for the American Red Cross setting forth the blood test results on JR excluding him as the father of Nicholas; (c) the affidavit of the Paternity Testing Coordinator for the American Red Cross setting forth the blood test results concluding that there is a 99.96% probability that William is the father of Nicholas, and that 99.54% of falsely accused men would be excluded as the father of Nicholas; (d) an affidavit made by William admitting that it was common knowledge, from statements made by Karen, that she and JR were unable to procreate; (e) Nicholas' and Karen's income and expense statement; (f) Nicholas' and Karen's statement of property; and (g) an affidavit made by Karen indicating that William had provided monetary support for the three children in the past years; (3) William's Answer to the original Petition; (4) an affidavit made by William denying

628

his paternity, and stating that the time computations regarding the date of Nicholas' conception and birth resulted in a pregnancy of only six months' duration; and (5) a financial affidavit made by William indicating a net monthly income deficit of $1254.00.

Aside from the foregoing, we cannot say that any other exhibit or affidavit was properly before the trial court, and its effect will not be considered. For instance, in searching the legal file, we discovered another affidavit of Karen which appears to be essentially duplicative of her testimony at the hearing on the motion for summary judgment. This affidavit was not referred to in Nicholas' and Karen's Motion for Summary Judgment and Memoranda in support thereof or in their Motion for Final Judgment under Rule 74.01(b). Therefore, we consider only those affidavits and exhibits enumerated above in determining the propriety of the trial court's order of summary judgment and award of temporary child support.

■ William argues that Nicholas and Karen have failed to overcome the presumption that JR is the father of Nicholas. We disagree. The trial court had before it the affidavit of the Paternity Testing Coordinator for the American Red Cross, stating that, based upon JR's blood test results, JR could not be the father of Nicholas. Further, the trial court also had an affidavit from William admitting that it was common knowledge, from statements made by Karen, that she and JR were unable to procreate. We conclude that the presumption was overcome, and we find no manifest injustice or miscarriage of justice.

■ William next argues that the trial court erred in allowing Karen to testify at the hearing on the motion for summary judgment over his counsel's objection as to lack of opportunity for discovery to prepare a defense, and that the testimony converted the proceeding into a mini-trial. In support of his argument, William cites this court to Missouri Rule 74.04, and argues that the presentation of testimony is "beyond the scope of the procedure for summary judgment." He has not directed us

to any Missouri case prohibiting the reception of such testimony. Nicholas' and Karen's brief fails to address this issue. Our research has revealed that such testimony has been allowed in our federal courts.

Fed.R.Civ.P. 56(c) Summary Judgment is substantially similar to Missouri Rule 74.04(c) Summary Judgment. Both state that summary judgment shall be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 43(e) states that, "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on *oral testimony* or deposition." (Emphasis ours). In *Hayden v. First Nat. Bank of Mt. Pleasant, Tex.*, 595 F.2d 994 (5th Cir.1979), the trial court received the testimony of several witnesses at the hearing on a motion for summary judgment, noting that: "Rule 43(e), which authorizes the use of oral testimony on motions, has been held to be applicable to motions for summary judgment, even though Rule 56 is silent on the point." *Id.* at 997 (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2723 (2d ed. 1983)). Missouri Rule 55.28 is practically identical to Fed.R.Civ.P. 43(e). Indeed, the Committee Note to Missouri Rule 55.28 states in part that, "This is the same as Rule 43(e) of the Federal Rules of Civil Procedure." Thus, we conclude that the trial court did not err in receiving Karen's testimony. We find no manifest injustice or miscarriage of justice.

We now turn to William's final contention that the trial court erred in entering its order of summary judgment and awarding temporary child support in that genuine issues of material fact as to William's paternity remain on the pleadings and affidavits. The trial court's order reads as follows:

> Plaintiffs' Motion For Final Judgment under Rule 74.01(b) called, argued and sustained on the question of paternity.

The Court determines that there is no just reason for delay, therefore the Court's prior order of Aug. 17, 1987 is entered as a final judgment in its entirety, including the award of temporary support, for purposes of appeal.

This order was in response to our Supreme Court's suggested use of Rule 74.-01(b) to avoid undue hardship on children during the pendency of paternity actions. *Landoll by Landoll v. Dovell,* 752 S.W.2d 323, 326[1, 2] (Mo. banc 1988).

Both Counts I and III deal with the issue of paternity, and Count II deals with the issue of support. Count I requests a declaration of paternity based upon certain factual allegations, and Count III requests the declaration of paternity via the specific enforcement of the written agreement providing that if blood test results indicate a greater than 90% probability that William is the father of Nicholas, then William's paternity is admitted. The trial court's judgment makes no mention of the written agreement or its provisions but sustains the "question of paternity" and awards temporary support. Thus, we conclude that the trial court's judgment did not adjudicate Count III.

Summary judgment is a drastic action. Therefore,

> [W]e must scrutinize the record in the light most favorable to the party against whom the motion was filed, and accord to that party the benefit of every doubt. To support a summary judgment, the pleadings, depositions and admissions on file, along with any affidavits must make it manifest that there is no genuine issue of material fact. Rule 74.04(c). If there is the slightest doubt as to the facts then a genuine issue of fact exists for purposes of Rule 74.04(c), and summary judgment should not be entered.

*Hawes v. O.K. Vacuum & Janitor Supply,* 762 S.W.2d 865, 867 (Mo.App.1989).

In contrast to William's assertion that to prevail on a motion for summary judgment, a movant must present unassailable proof, we note that "[i]t is no longer necessary for a movant to show by unassailable proof that he is entitled to a summary judg-

ment." *Hayes v. Hatfield,* 758 S.W.2d 470, 472[1] (Mo.App.1988). Rule 74.04, effective January 1, 1988, which is applicable to this judgment, removed that requirement. Our review is directed to whether or not the pleadings, affidavits, and other material before the trial court manifest the absence of a genuine issue of material fact. If the slightest doubt exists as to a material fact, then summary judgment should not be entered. *Hawes,* 762 S.W.2d at 867. A material fact has been defined as "one of such probative force as would control or determine the result in the litigation." *Olson v. Auto Owners Ins. Co.,* 700 S.W.2d 882, 885[3, 4] (Mo.App.1985). Further, we note that "the party confronted by a proper motion for summary judgment may not rest upon mere denials in the pleadings but must set forth specific facts which show there is a genuine issue for trial. Rule 74.04(e)." *Kinder v. Notorangelo,* 615 S.W.2d 433, 434[1–3] (Mo.App.1980).

■ In determining paternity, the trial court should consider evidence such as blood test results, if any, admissions of the parties as to the intimacies, the time and place of the copulations, and access by other males to the mother during the period of conception. *Imms v. Clarke,* 654 S.W.2d 281, 287[8] (Mo.App.1983).

Also, we note that in 1987, after this action was initiated, our legislature enacted § 210.836, tracking the direction set forth in *Imms:*

> Evidence relating to paternity may include:
>
> (1) Evidence of sexual intercourse between the mother and the alleged father during the possible time of conception of the child;
>
> (2) An expert's opinion concerning the probability of the alleged father's paternity of the child based upon the duration of the mother's pregnancy;
>
> (3) Blood test results, weighed in accordance with the evidence of the statistical probability of the alleged father's paternity of the child;
>
> (4) Medical or anthropological evidence relating to the alleged father's paternity

of the child based on tests performed by experts; and

(5) All other evidence relevant to the issue of the paternity of the child.

 Here, the trial court had before it the pleadings and affidavits filed by both parties in addition to Karen's testimony. Nicholas' and Karen's petition alleged that Karen and William engaged in sexual relations in August of 1984 in St. Louis, Missouri which resulted in the birth of Nicholas on May 8, 1985. The petition further alleged that the parties submitted to blood tests to determine William's paternity. Nicholas and Karen also submitted two affidavits of the Paternity Testing Coordinator for the American Red Cross setting forth the blood test results which excluded JR as Nicholas's father, and further concluded, based upon the blood tests performed on William, that: (1) there is a 99.96% probability that William is the father of Nicholas; and (2) that 99.54% of falsely accused men would be excluded as the father of Nicholas. Nicholas and Karen additionally submitted an affidavit made by William admitting that it was common knowledge, from statements made by Karen, that she and JR were unable to procreate.

Further, Karen testified to the following: (1) she has been married to JR for approximately nineteen years; (2) William visited her on August 20, 1984 in St. Louis, Missouri and, at that time, twice engaged in sexual relations with her resulting in ejaculations; (3) Karen's pregnancy lasted 38 weeks instead of the normal 40 week period; (4) Nicholas was born by Caesarean section two weeks early; and (5) during the period of August 20, 1984, and before and after August 20, 1984, the only other person Karen engaged in sexual relations with, besides William, was JR.

William submitted very little to the trial court on the question of his paternity. Indeed, his brief refers only to his answer and affidavit. In his answer, William admitted engaging in sexual relations with Karen, but denied the time, the place, and the results of those relations. William further admitted undergoing blood tests, but he denied the results of the tests. William asserted no specific facts in his answer that would demonstrate the existence of a genuine issue of material fact. *See Hawes*, 762 S.W.2d at 867. Further, the affidavit he refers to in his brief contains only a general denial of paternity, and an assertion that Karen's time computations regarding the date of Nicholas' conception and birth resulted in a pregnancy of only six months' duration.

The petition and Karen's testimony charge that the conception occurred in August of 1984 with the resulting birth in May of 1985; a pregnancy of nine months' duration. Further, our courts have taken judicial notice that the human gestation period is generally 280 days, although the period of gestation may range up to eleven months. *State, Div. of Family Services v. Guy*, 750 S.W.2d 618, 619[3] (Mo.App.1988) (citations omitted). Any deviation regarding the normal 280 day gestation period was adequately explained by Karen, who stated that her pregnancy lasted 38 weeks, rather than the normal 40 weeks, because Nicholas was born by Caesarean section two weeks early. Neither William's answer nor affidavit sets forth specific facts refuting this or alleging that the conception or birth occurred on different dates.

Reviewing the pleadings, affidavits, testimony, and other material before the trial court in the light most favorable to William and according him the benefit of every doubt, we do not have any doubt as to any material fact in establishing William's paternity. Thus, we conclude that the trial court properly entered summary judgment on the question of paternity.

 However, the trial court's order awarding temporary support must be reversed and remanded. The order of September 1, 1988 reinstates the trial court's August 17, 1987 order awarding temporary support in the amount of $1200.00 per month. Karen's affidavit indicates that William provided monetary support for the three children in past years; to wit: $20,-913.00 in 1983; $41,833.35 in 1984; $55,-902.00 in 1985; and $28,750.00 for six months in 1986. William filed a financial

affidavit indicating a net income deficit of $1254.00 per month. The ability of William to pay $1200.00 per month clearly remains in dispute leaving a genuine issue of material fact. The trial court's order dealing with temporary support is reversed and remanded.

Judgment affirmed in part and reversed and remanded in part.

DOWD, P.J., and HAMILTON, J., concur.