**Mary Roslyn SMITH, Plaintiff–Respondent,**

v.

**TAYLOR–MORLEY, INC., Defendant–Appellant.**

No. 68399.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

---

Susman, Schermer, Rimmerl & Shifrin, L.L.C., Michael Waxenberg, St. Louis, for Defendant–Appellant.

Lewis, Rice & Fingersh, L.C., John M. Hessel and Duane L. Coleman, St. Louis, for Plaintiff–Respondent.

HOFF, Judge.

Taylor–Morley, Inc. (TMI) appeals a summary judgment granting Mary Roslyn Smith (Smith) $97,966.64 which includes commission plus prejudgment interest for her services as a real estate agent after breach of a purchase contract. We affirm.

First, TMI contends the trial court erred in granting summary judgment because the purchase contract is ambiguous by use of the phrase "plat approval", and such an ambiguity is to be resolved by a jury. Second, TMI contends Smith lacks standing to pursue the action because the assignment by Deer Wood Realty Specialist, Inc. (Deer Wood) to Smith of its rights, title and interest under the contract was invalid due to the dissolution of the company prior to the assignment.

Smith is a licensed real estate agent. In early 1988, she learned Robert and Eleanora Boston were interested in selling thirty-four acres of undeveloped land ("the property") located in Bridgeton, Missouri. The property was zoned R–3 for residential purposes, and has remained so since that time.

Smith approached TMI to inquire whether the company would be interested in buying the property. TMI expressed interest and thereafter, submitted various offers to purchase the property through proposed contracts drafted by Smith.

In June 1988, Robert Boston died. Subsequently, the property was transferred to a trust and trustees were responsible for the sale of the property on Mrs. Boston's behalf.

On March 9, 1989, TMI proposed a contract offering to purchase the property for $1,728,500. The contract was accepted by the trustees on March 16, 1989. The contract included a four percent brokerage commission to be paid to Smith's employer, Deer Wood, upon the closing of the sale.[1] Additionally, the contract was made contingent

---

1. Smith had worked for Coldwell Banker when she originally approached TMI. In January 1989, Smith terminated her employment with Coldwell Banker and began working for Deer Wood. Because Smith was still negotiating the sale of the Bridgeton property when she joined the company, Deer Wood agreed to pay Smith 90% of the commission upon the sale.

upon TMI's approval of engineering and soil tests and TMI's "ability to secure plat approval from the City of Bridgeton within 120 days of contract acceptance."

It is undisputed that TMI made no effort at any time to obtain plat approval of the property as it was zoned. Rather, TMI submitted a rezoning application to the City of Bridgeton seeking to have the property rezoned R–4 so that 115 houses could be built on the property instead of 105.

As the trust still owned the property when TMI sought to have the property rezoned, it was necessary for the trustees to co-sign the rezoning application. The trustees complied with TMI's request. At this time, all contingencies contained in the contract had been satisfied except plat approval from the City of Bridgeton.

TMI's rezoning application was discussed at public hearings in Bridgeton on June 12 and July 10, 1989, although no decision was reached. On July 14, 1989, the trustees agreed to extend the deadline on the "plat approval" contingency by sixty days until September 16, 1989. On August 14, TMI withdrew their rezoning application because of local opposition. TMI did not, thereafter, seek to obtain plat approval for the property as it was zoned. On October 31, 1989, TMI notified the trustees it was withdrawing from the contract.

In early 1990, the trustees accepted a contract from Inwood Corp. (Inwood) to purchase the property for $1,430,357.50. In June 1990, TMI paid Inwood a $65,000 consulting fee for obtaining a contract to purchase the same property. In August 1990, TMI entered into a contract to purchase a portion of the property from Inwood, and also entered into an option contract to purchase the remaining portions for a total price of $1,430,357.50.

The property was sold to Inwood in late August 1990. Inwood ultimately sold the property to TMI. TMI received plat approval under the existing R–3 zoning, and the property was developed.

In early 1992, Deer Wood officially dissolved as a corporation. Subsequently, Deer Wood assigned all of its rights, title and interest under the contract to Smith. Thereafter, Smith brought a breach of contract claim against TMI requesting commission as a result of the subsequent sale of the property. The trial court granted Smith summary judgment and ordered TMI to pay $97,966.64 to Smith which includes commission plus prejudgment interest. This appeal followed.

In its first point on appeal, TMI contends the trial court erred in granting summary judgment because the purchase contract is ambiguous by use of the phrase "plat approval" and resolution of ambiguities are within the province of the jury, not the trial court. TMI argues that although rezoning was not expressly delineated in the purchase contract, the trustees understood and agreed the sale of the property would close only upon TMI's ability to secure plat approval under an R–4 classification of the property.

This Court's review of a summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when a movant demonstrates, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue of material fact and the admitted facts show a legal right to judgment. *Id.* at 380.

Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 91–92 (Mo.App.1995). We will accord the non-moving party the benefit of all reasonable inferences from the record. *ITT*, 854 S.W.2d at 376.

The issue of whether a contract is ambiguous is a question of law. *Follman Properties Co. v. John Henry Foster Co.*, 872 S.W.2d 499, 501 (Mo.App.1994). To determine whether a contract is ambiguous, this Court considers the whole document and, absent any definition within the contract, gives contract terms their natural and ordinary meaning. *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 435–436 (Mo.App.1996).

■ A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning. *Follman*, 872 S.W.2d at 501. A contract is not ambiguous merely because the parties disagree over its meaning. *Daniels Express*, 897 S.W.2d at 92.

■ Where no ambiguity exists in the contract, the court determines the intention of the parties and the contract's clear meaning from the contract alone. *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 865 (Mo.App. 1988). Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. 1992). This Court will not create an ambiguity by using extrinsic or parole evidence. *Lake Cable*, 914 S.W.2d at 436.

In its first subpoint, TMI argues the contract is patently ambiguous by use of the phrase "plat approval" because the purchase contract is wholly silent as to the particular zoning classification for which plat approval was to be sought.

■ Patent ambiguities arise upon the face of the document. *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo. banc 1991). Smith suggests, and this Court agrees, the natural and ordinary meaning of the term "plat" can be found in *BLACK'S LAW DICTIONARY* 1151 (6th ed. 1990):

> **PLAT** or PLOT. A map of a specific land area such as a town, section, or subdivision showing the location and boundaries of individual parcels of land subdivided into lots, with streets, alleys, easements, etc., usually drawn to scale.

■ We find no patent ambiguity in the contract by use of the phrase "plat approval." Plat approval from the City of Bridgeton would have required mapping the property to show how the lots would be divided, where the homes would be placed upon the lots, where easements lay, and how streets would run. Although the number of houses allowed upon the property is *determined* by zoning, it is impossible to construe "plat approval" as

being *dependent* on zoning. The zoning is already assumed. Plat approval is to make sure the property is being developed within the given zoning restrictions on each particular parcel of property. Reasonable people would not differ in their interpretation of the phrase "plat approval" because the terms are not susceptible of more than one meaning.

If contracting parties intended for the contract to be dependent upon a certain contingency, the contract would have so stated. *Follman*, 872 S.W.2d at 501. If the parties in this case had intended for the contract to be contingent upon rezoning the property to an R–4 classification, the contract would have so stated. The contract did not.

Contrary to TMI's argument, the contract is not "wholly silent" as to the particular zoning classification for which plat approval was to be sought. Under the section marked "Sale conditions", it specifically states: "Seller shall furnish Trustee deed, *subject to* deed restrictions, easements, rights-of-way of record, *zoning regulations ... existing on the date contract is executed by purchaser....*" (emphasis added).

Clearly, the contract addresses the zoning of the property. The zoning provision is not ambiguous and does not make the plat approval contingency ambiguous. Additionally, it is clear TMI was fully aware of this provision when the contract was executed, because it crossed out language in this specific section and added the word "Trustee" to reflect the fact the property was held in trust.

■ Even if the contract had not specifically addressed zoning, it is well settled that all persons who contract with reference to a subject-matter within the limits of a municipality, where there are police regulations such as zoning ordinances, are charged with knowledge of and are presumed to know the provisions of the regulations. *Lazare v. Hoffman*, 444 S.W.2d 446, 450 (Mo.1969). This Court presumes the parties have entered into such contracts with knowledge of the zoning classifications. *Id.* Thus, we view such zoning provisions as integral parts of the contract. *Id.*

In its second subpoint, TMI suggests the purchase contract is latently ambiguous as to

the meaning of the term "plat approval." It argues the latent ambiguity is evidenced by the fact all parties joined in submitting the rezoning application, and the fact no party questioned why plat approval was not being sought under the existing R–3 zoning classification.

Latent ambiguities arise by reason of collateral matters and/or external circumstances which render otherwise clear language in a contract uncertain. *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 912 (Mo. App.1984). Latent ambiguities arise in cases where a contract cannot be executed due to the ambiguity. An example of latent ambiguity is found in *Royal Banks of Missouri v. Fridkin,* 819 S.W.2d 359 (Mo. banc 1991), where the court found a latent ambiguity in a contract describing a promissory note dated October 29, 1984 for $10,000, when only a promissory note dated October 29, 1984 for $50,000 existed. Latent ambiguities are not apparent on the face of the document and therefore, extrinsic evidence is admissible to show the real intent of the parties. *Id.* at 362.

We find no latent ambiguity in the contract at issue in this case. The contract could have been executed under the existing R–3 zoning classification. It is clear TMI could have obtained plat approval under the existing R–3 zoning classification because TMI was able to receive such plat approval under the unchanged R–3 zoning when it purchased the property from Inwood within the following year. We also note that a latent ambiguity could not have existed as to zoning because, as previously discussed, the zoning regulations were specifically mentioned in the contract. TMI was to take the deed to the property subject to the existing R–3 zoning classification.

Because this Court finds no ambiguity in the contract, we will determine the intention of the parties and the contract's clear meaning from the contract alone. The contract expressly states the deed is subject to the zoning restrictions existing on the date executed by the purchaser. Accordingly, we hold that TMI failed to satisfy the "plat approval" contingency because it did not attempt to obtain plat approval under the existing R–3 zoning regulations. We find that TMI knew of the R–3 zoning classification when it entered into the contract and hold such zoning classification is an integral part of the contract.

Additionally, under this subpoint, TMI argues that Smith breached her fiduciary duties by bringing suit against TMI. TMI asserts Smith cannot now claim that it should have sought plat approval under the existing zoning after she helped TMI with its unsuccessful rezoning application prior to the sale. TMI asserts the trial court erred in making no specific ruling on this affirmative defense in its summary judgment. However, this argument was not stated in the first point relied on, nor in the subpoint.

This Court will only address questions stated in the points relied on, and matters which are casually alluded to in the argument portion of the brief without having been stated under points relied on are not preserved or presented for appellate review. *Landoll v. Dovell,* 779 S.W.2d 621, 627 (Mo. App.1989). We find this argument is not presented for review by this Court.

Lastly under its third subpoint, TMI argues that if this Court finds the phrase "plat approval" to be unambiguous, it will preclude possible defenses in the future. It argues the trustees would be precluded from defending against potential suits brought by beneficiaries of the trust who might sue the trustees for breach of fiduciary duties in failing to sue TMI for breach of the purchase contract.

We note the three necessary elements of a point relied on are: (1) a concise statement of the challenged ruling of the trial court; (2) the rule of law which the court should have applied; and (3) the evidentiary basis upon which the asserted rule is applicable. *Jefferson v. Bick,* 872 S.W.2d 115, 118 (Mo.App.1994).

This subpoint does not challenge a ruling of the trial court, nor does it assign error to the trial court. Therefore, it is not presented for review by this Court.

This Court finds no ambiguity in the contract. Furthermore, there is no genuine is-

sue of material fact. Because the admitted facts show a legal right to judgment, the trial court did not err in granting summary judgment. Point denied.

In its second point, TMI argues Smith lacks standing to pursue this cause of action because Deer Wood's assignment of all of its rights, title and interest under the contract to Smith is invalid. It contends the assignment is invalid because Deer Wood had been administratively dissolved before the assignment to Smith. It further argues that even if this Court found Deer Wood to have authority to pursue collection of a debt after dissolution, the action must be brought by the statutory trustees of the dissolved corporation.

As noted previously, this Court will only review points on appeal that challenge a trial court ruling and assign error to the trial court. *Id.* TMI's second point relied on does not challenge a trial court ruling, nor does it assign error to the trial court. It is not presented for appellate review. However, we will review this point *ex gratia* for plain error.

The effect of corporate dissolution is determined by statute. Section 351.476 RSMo Cum.Supp.1991, provides:

1. A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

. . .

(5) Doing every other act necessary to wind up and liquidate its business and affairs.

2. Dissolution of a corporation does not:

. . .

(5) Prevent commencement of a proceeding by or against the corporation in its corporate name.

■ The assignment by Deer Wood to Smith of its rights, title and interest under the purchase contract is within the bounds of "winding up" its business and affairs after the corporation was dissolved. § 351.476.1(5). We find assignment of contract rights of a dissolved corporation to be allowable under Missouri law.

The Western District addressed the issue of whether an assignment of a dissolved corporation's right to indemnity or contribution to an insurance company was valid in *Integrity Ins. Co. v. Tom Martin Constr. Co., Inc.,* 765 S.W.2d 679, 683 (Mo.App.1989). The *Integrity* court found that in order for the assignment to be valid, all statutory trustees would have had to have joined pursuant to § 351.525. *Id.*

Section 351.525 mandated every statutory trustee to be named in a suit after dissolution of a corporation. However, § 351.525 was repealed on May 29, 1991. Because of this statute's repeal, with no provision under current Missouri law replacing it, we find that Deer Wood's assignment of its rights, title and interest under the contract is valid.

TMI cites no Missouri case, and this Court has found none, which prohibits assignments made by a dissolved corporation as a "winding up" action. Point denied.

Additionally, TMI argues that Smith lacks standing because she failed to comply with 4 CSR 250–8.095, which requires buyer's agents to disclose their representation of the buyer in writing.

This argument was not presented in the point relied on. Additionally, this argument does not challenge a trial court ruling and does not assign error to the trial court. As previously noted, this Court will only address arguments stated in the points relied on. *Landoll,* 779 S.W.2d at 627. Furthermore, we will only address arguments which challenge a trial court ruling and assign error to the trial court. *Jefferson,* 872 S.W.2d at 118. This argument is not presented for review by this Court.

Judgment affirmed.

PUDLOWSKI, P.J., and SIMON, J., concur.